ORMUND, RESPONDENT, *v.* GRANITE MOUNTAIN MINING COMPANY, APPELLANT.

[Argued October 15, 1891. Decided December 14, 1891.]

MINES AND MINING—*Location—Discovery of ore.*—In the case at bar the only issue was whether the plaintiff had discovered within the boundaries of his claim a vein of valuable ore prior to the location of defendant's claim. It appeared from the testimony of plaintiff and his witnesses that there was quartz in place in the discovery and in a cut connecting therewith and run after the location; that two of the witnesses had assayed some quartz taken from the discovery and found silver. Thirteen witnesses whose testimony for the defendant was not rebutted, testified to the effect that there was no vein in plaintiff's discovery shaft at the time of defendant's location, and that if there had been those making the defendant's location were positive they would have seen it; that plaintiff's discovery shaft was in the top rock and not in rock in place. The jury found for the defendant after an inspection of the premises in controversy. *Held,* that the verdict was supported by the testimony, and the granting of a new trial was an abuse of discretion.

JURY—*Inspection of premises— Verdict.*—It is proper for a jury, who have viewed the property, which is the subject of litigation, to take into consideration the result of their observations in connection with the evidence in deliberating upon the verdict.

*Appeal from Third Judicial District, Deer Lodge County.*

Action to determine the right to the possession of mining premises. The cause was tried before F. W. COLE, Special Judge, sitting in place of DURFEE, J. Defendant appeals from an order granting plaintiff's motion for a new trial.

*Forbis & Forbis,* for Appellant.

The court based his granting of the motion for a new trial upon the ground that the evidence was not sufficient to justify the verdict. We are aware of the decisions of the Supreme

Court of California and of this State, where it is held that the granting of a motion for a new trial upon the grounds of the insufficiency of the evidence is addressed to the discretion of the lower court, and that if the new trial is granted the Supreme Court will not interfere with such order. We contend, however, that the granting of a new trial in such cases, while discretionary with the trial court, is a legal and not a capricious discretion. The case at bar is a very strong one in favor of the Supreme Court confining the trial court to a proper and legal discretion. In the absence of any showing to the contrary, it will be presumed that every finding in this case was against the plaintiff; that the jury found against him upon all material points. If so, it would do him but little good to point out that he had a discovery when he had not complied with the other requirements of the law in making his location. That is exactly what he has done in this case, and we hold that he has not done sufficient to justify the court in reviewing the evidence, for a reviewal upon only one point would be useless, when the other findings were against him. (Hayne on New Trial and Appeal, § 150.)

*Word & Smith,* for Respondent.

The granting or refusing a new trial rests in the sound legal discretion of the trial judge. The judge of the trial court is better acquainted with the facts and the witnesses, and is better able to judge of the effect and weight of the evidence than the appellate court. Therefore, where the record shows that the evidence is conflicting the granting of a new trial is discretionary with the trial judge. (*Kinna* v. *Horn,* 1 Mont. 597 ; *Chauvin* v. *Valiton,* 7 Mont. 581 ; *Kilby* v. *Baker,* 9 Mont. 398 ; *Landsman* v. *Thompson,* 9 Mont. 182 ; *Kircher* v. *Conrad,* 9 Mont. 196 ; 18 Am. St. Rep. 731.) An order granting a new trial on account of insufficiency of evidence to justify the verdict will not be reversed on appeal, unless it appears that there has been a manifest and flagrant abuse of the discretion of the trial court, although the appellate court may differ with the trial court as to the weight of evidence. (*Pico* v. *Cohn,* 67 Cal. 258 ; *Weddle* v. *Stark,* 10 Cal. 301 ; *Cappe* v. *Brizzolara,* 19 Cal. 607 ; *Oullahan* v. *Starbuck,* 21 Cal. 413 ; *O'Brien* v.

*Brady,* 23 Cal. 243; *Hawkins* v. *Reichert,* 28 Cal. 534; *Hall* v. *Bark Emily Banning,* 33 Cal. 522; *Gerold* v. *Brunswick etc. Co.* 67 Cal. 124; *Irving* v. *Cunningham,* 58 Cal. 306; *Pierce* v. *Schaden,* 55 Cal. 406; *Altschul* v. *Doyle,* 48 Cal. 535; *Sullivan* v. *Wallace,* 73 Cal. 307; *Gray* v. *Winder,* 77 Cal. 525; *Harnet* v. *Central Pac. R. R. Co.* 78 Cal. 31; *Sharp* v. *Hoffman,* 79 Cal. 404; *Townsend* v. *Briggs,* 88 Cal. 230; *Nelson* v. *Floyd,* 3 West Coast Rep. 114.)

BLAKE, C. J. — The complaint alleges that Ormond "is now, and has been since . . . . the ninth day of May, 1888 . . . . the owner of, and in the possession of, and entitled to the possession of," the Dark Cloud Lode Mining Claim; that after Ormond "had become the owner of, and in possession of, the above described mining ground, by virtue of prior discovery, and the due location of the said lode claim," the Granite Mountain Mining Company "applied for a patent in the United States land office at Helena . . . . for an alleged claim called by the defendant the Molar Lode Claim, which said pretended lode claim overlaps and conflicts with the area" and title of Ormond to said Dark Cloud Claim to the extent of about ten acres; that Ormond has filed in said land office his adverse claim thereto, and now brings this suit "for the purpose of determining the right to the possession of said mining ground, and the ownership thereof; . . . . that the said pretended claim, application, and proceedings of the defendant, as aforesaid, cast a cloud upon the plaintiff's title."

The prayer is that Ormond "be adjudged the owner of said Dark Cloud Lode, . . . . and every part thereof (except as against the paramount title of the United States), and the right to the possession of the premises . . . . included in the adverse survey to the defendant's application for patent, and that the defendant be adjudged to have no right, title, or interest therein."

The answer denies that Ormond owned at any time the property described in the complaint, or was entitled to its possession; and alleges that the defendant has been at all the times mentioned in the complaint "the owner of that said portion of said property described as the Molar Lode Claim, and in the possession of the same, and entitled to the possession thereof; and

that at the said time named in said complaint, and prior to the time of filing the adverse claim to the same in said land office, . . . . defendant made application for a patent for the same, to which it has a good right; and that the said plaintiff has no right or title to any of the said property."

The prayer of the answer is that the defendant "be adjudged to be the owner of and entitled to the possession of all the said property described in the said complaint as the said Molar Lode, and that plaintiff have no right to the same." The averments of the answer are denied by the replication.

The following verdict was returned: "We, the jury in the above-entitled action, find the title and right to the possession of the ground in controversy to be in the defendant."

It is stated in the judgment that "the court ordered that a decree be entered herein in accordance with the verdict: . . . . Wherefore it is ordered, adjudged, and decreed by the court that the title and right of possession of the premises described in the plaintiff's complaint and herein in controversy, . . . . and being the ground in conflict between the Dark Cloud Lode Claim and the Molar Lode Claim, . . . . is in the defendant, and that defendant is the owner and entitled to the possession thereof, and that the plaintiff has no interest therein or right or claim thereto."

Ormond afterwards filed and served his notice of intention to move for a new trial, and relied upon this among other grounds: "Insufficiency of the evidence to justify the verdict in this, to wit: (*a*) That it was shown by the evidence that the plaintiff made a discovery within the limits of his claim as afterwards located, in accordance with the instructions of the court, prior to the location of his claim, and prior to the location of the defendant's claim. (*b*) In that the evidence showed a discovery by plaintiff within the limits of the Dark Cloud Claim, in accordance with the instructions of the court, prior to the discovery and location of defendant's Molar Claim." These were the sole grounds which related to the evidence. The following order was made and entered: "Motion for a new trial sustained, for the reason that the verdict was not supported by the evidence."

An examination of the record shows that there was only one

issue of fact upon the trial: Did the plaintiff discover within the boundaries of the Dark Cloud Claim a vein of valuable ore prior to the location of the Molar Claim? The plaintiff testified he found a foot-wall in the discovery, and quartz in place, and mineral in an open cut; the claim was located May 9, 1888; the cut was run after the location, and commenced twenty-five or thirty feet below the discovery; the vein was found four or five feet east of the discovery, and well defined; it was the same lead as in the discovery.

E. O. Akerman testified he was upon the premises for the first time in June, 1890, and found quartz in the discovery shaft three and one half or four feet from the surface; the seam is not very wide there, but lower down it runs to eighteen inches wide; he assayed some quartz taken from the discovery, and found silver; found in the open cut a vein of quartz which connected with the discovery; the vein is about one and one-half inches wide inside of the discovery shaft, and about two feet from the surface; have never mined; the vein is eighteen inches wide in the cut, and about two feet from the bottom; the highest assay was four and one-half ounces of silver. This came from ore at the depth of seven feet in the cut.

J. E. Babcock testified he was upon the Dark Cloud Claim last winter; found a vein of quartz in the discovery shaft, and assayed it, and got three ounces of silver; the vein is three feet wide at the bottom, and there is about one foot of quartz; the cut and shaft are one open cut; the north part of it may have been a shaft, and four feet from the surface found a vein a foot wide; the vein was nine feet long, and run from the cut into the shaft.

Mr. McFadden testified he worked for plaintiff in June and July, 1888; the vein at the discovery shaft was about eighteen inches or two feet thick; made a cut thirty-five or forty feet long, and run into the shaft; the same ledge is in the cut and shaft; started to work the last of June or first of July, and was there two or three weeks; saw a well-defined lead in the shaft before he went to work; the vein was fifteen inches to two feet thick, and was within two or three feet of the surface.

Frank Barnes testified he saw the discovery shaft of the Dark Cloud Claim in the spring of 1888, and found a ledge of

mineral-bearing rock in place two or two and one-half feet wide.

Mr. Larson testified he saw McFadden at work upon the Dark Cloud Claim, and the same vein was in the shaft and cut.

F. Carey testified he was on the Dark Cloud Claim in June, 1890, and the shaft, after about fifteen or sixteen inches, had lead matter.

The plaintiff then rested, and the foregoing statement is a fair summary of the testimony in his behalf upon the point in controversy. The defendant produced thirteen witnesses, who testified to the contrary. We will not notice what was said by each of these persons, but will present an abridgment of their evidence. The Molar Claim was located July 19, 1888; there was no vein in the discovery shaft of the Dark Cloud Claim; there was no vein in the cut, July 19, 1888; if there had been a vein about ten or fifteen inches wide, those who examined the Dark Cloud Claim for this purpose are positive they would have seen it; the shaft was in the top rock, and not rock in place, or a solid formation; a trace of silver can be found in assaying, with litharge, any kind of rock.

No testimony was offered in rebuttal by the plaintiff. It appears from the record that "the jury, under the direction of the said court, proceeded to the premises in controversy, and viewed the same," before they returned their verdict. The Code of Civil Procedure contains this section: "Whenever, in the opinion of the court, it is proper for the jury to have a view of the property which is the subject of litigation, or of the place in which any material fact occurred, it may order them to be conducted in a body, under the charge of an officer, to the place, which shall be shown to them by some person appointed by the court for that purpose." (§ 263.) This action of the jury, in pursuance of the order of the court below, makes a radical distinction between the case at bar and the authorities cited by the respondent. In *Erhardt* v. *Boaro*, 113 U. S. 527, Mr. Justice Field for the court said: "It would be difficult to lay down any rules by which to distinguish a speculative location from one made in good faith with a purpose to make excavations and ascertain the character of the lode or vein, so as to determine whether it will justify the expenditures required to extract the metal; but a jury from

the vicinity of the claim will seldom err in their conclusions on the subject." In deliberating upon their verdict, they had the right to take into consideration their observations in connection with the evidence. (*Topeka* v. *Martineau*, 42 Kan. 387; *Parks* v. *Boston*, 15 Pick. 198; *Smith* v. *Morse*, 148 Mass. 407; *Washburn* v. *Milwaukee etc. R. R. Co.* 59 Wis. 364; Thompson on Trials, §§ 893–895.) It must be understood, however, that the verdict under these circumstances is not to be treated as conclusive upon any issue. In this case, the jury apparently found the facts in accordance with the evidence upon the part of the defendant. Upon a review of the record, we think that the verdict was amply supported by the testimony, and that the court abused its sound legal discretion in granting the motion for a new trial.

It is therefore ordered and adjudged that the order appealed from be reversed, and that the cause be remanded, with directions to overrule the motion for a new trial.

*Reversed.*

Harwood, J., and De Witt, J., concur.

