# LOUIS HOLLAND, Appellant, v. JOSEPH E. HUSTON, Respondent.

[Submitted June 22, 1897. Decided June 30, 1897.]

## Conversion—Market Value—Expert—New Trial—Estoppel—Harmless Error—Instructions—Newly Discovered Evidence.

1. CONVERSION—*Market Value--Expert*—In an action for conversion of horses, a resident of the neighborhood, who owns horses and knows the horses converted and says that he knows "pretty nearly the market value of such horses at the time of the conversion," may testify as to the value; although he may say that he does not know "what the market value of horses was."

2. SAME—*New Trial*—Where the answer admits that the property is worth $100, and the evidence shows that it was sold for $180, at an execution sale, and a competent witness testifies that it was worth $250, a verdict fixing the value at that sum was justified by the evidence.

3. EVIDENCE—*Estoppel—Pleading*—In an action against a constable for attaching plaintiff's property under a writ in which "O" is the defendant, evidence, offered for the purpose of showing that plaintiff authorized "O" to say that the property was his, is properly refused, where the answer does not plead an estoppel, or any fact showing that defendant was misled by the statement.

4. EVIDENCE—*Harmless Error*—Where the court instructs the jury that they should not consider a conversation which had been admitted, the error, if any, in admitting testimony concerning the conversation is cured.

5. An instruction in action of conversion to the effect that "the measure of damages is the value of the property at the time it was taken with interest, and that the jury should take into consideration the evidence of the witnesses, and that they are the sole judges of the weight to be given such testimony, and that the jury had the right to take into consideration as bearing upon the question of value (not as *prima facie* evidence, but bearing upon the question of value) the cost, age, size and condition of the team and the time of the conversion, is not a comment upon the evidence, but simply mentions it.

6. *Newly Discovered Evidence*—The affidavit of "C" that he had learned that one "P" would testify as to certain issues in the case, that "C" had learned of this since the trial of the case; that plaintiff had told one "H" that he had traded off the horses, the subject of the suit to one "O," and that plaintiff, after the trial, had told "C" of this admission, and the affidavit further states that "C" before the trial had tried to find "P" but was unable to do so, is not sufficient to justify an order granting a new trial on the ground of newly discovered evidence; where it further appears that there was not sufficient diligence in obtaining the testimony of "P," and where "H" positively contradicts the portion of the affidavit referring to him.

*Appeal from District Court, Cascade county. C. H. Benton, Judge.*

ACTION by Louis Holland against Joseph E. Huston. Verdict for plaintiff. From an order granting a new trial, plaintiff appeals. Reversed.

Statement of the case by the justice delivering the opinion.

Respondent (defendant below) a constable at Great Falls, Cascade county, Montana, by virtue of an execution in his hands upon a judgment rendered against one Olson in a justice's court, levied upon and sold two horses as the property of Olson. The appellant (plaintiff below), on March 8, 1895, brought an action against said defendant for the conversion of these horses, claiming they belonged to him.

The complaint alleged that the value of the horses at the time of the conversion was $300. The answer denied plaintiff's ownership, and alleged that the value of the horses did not exceed $100. .

A trial resulted in a verdict for plaintiff for $267.39. Defendant filed a motion for a new trial. The specification of errors on the motion for a new trial is as follows :

Specification of particulars in which the evidence is insufficient to justify the verdict : (1) "The jury found the value of said team of horses to be $250, whereas the only evidence as to the value of said team was the fact that said team sold at the sale for $180, and the testimony of witness Catlin that said team was worth only $125."

Specification of errors occurring at the trial, and excepted to by the defendant :

"(1) The court erred in sustaining plaintiff's objection to the following question, asked witness Holland, by defendant: 'Q. Did you know or authorize Mr. Olson to tell around the country that those horses belonged to him ?'

"(2) The court erred in denying the following motion made by Attorney Hoffman, representing one of the parties defendant in interest : 'I move to exclude all this testimony in regard to this conversion between this witness and Catlin, and move to strike it out so far as it is inadmissable against the defendant Sam Dean.'

"(3) The court erred in submitting the following instruction to the jury, to wit : 'The other question is the question as to the value of the property at the time of the conversion. The defendant, in his answer, denies that the two gray geldings were of the value of $300, but alleges, on the contrary,

that each of said geldings was not worth to exceed the sum of $50 each. If you find for the plaintiff, under that allegation of the answer, you should return a verdict of damages in favor of the plaintiff in the sum of $100, unless you find from the evidence that the property was actually worth more than that.'

"(4) The court erred in instructing the jury as follows: 'The measure of damages in this case is the value of the property at the time it was levied upon, with interest at ten per cent. thereon from the time it was taken. In arriving at the value of the property, you should take the evidence of the witnesses who have testified in this case; and you are the sole judges as to the weight you give to their testimony, and you also have the right to take into consideration, as bearing upon that question (not as *prima facie* evidence, but bearing upon the question of value), the cost of the team, the age, size, and condition of the team at the time of the conversion.' "

As another ground for a new trial, the defendant filed the affidavit of one F. B. Catlin. In this affidavit, Catlin swore that he was one of the real parties defendant in interest in the action; "that, since the trial of said cause, he has for the first time learned that, just a few days prior to the date of the attachment of the horses mentioned and described in the complaint in said action, plaintiff, Holland, met one John Handley near the town of Belt, Montana, and then and there told said Handley that he (Holland) had traded off said horses to Peter Olson, being the said Olson mentioned in the answer, but that he had not given said Olson a bill of sale of said horses because Olson was afraid that some of his creditors would attach said horses." The affidavit further recited that Handley, after the trial, had informed Catlin of this admission on the part of plaintiff, Holland. It also contained the following statement: "Affiant says that, long since the trial of said cause, he has learned for the first time that one George Pannick will testify that, soon after the attachment of said team of horses, he met said Holland, and was told by him that he had traded with said Olson for Olson's four cayuses, and had a bill

of sale to them from said Olson. Affiant says that, prior to
the trial of said case, he made inquiry of B. F. O'Neal, ex-
sheriff of Choteau county, and tried to ascertain the where-
abouts of said Pannick, but was unable to do so.'' Catlin
also swore therein that, previous to the trial, he had made in-
qui y of numerous persons in order to ascertain who was the
real owner of the horses in dispute, but had been unable to
obtain any information in that respect.

Another affidavit was filed by defendant, in which one S. T.
Clark stated that he had heard Handley tell plaintiff of the
conversation between Holland and himself.

In opposition to these two affidavits, plaintiff filed the affi-
davit of said Handley, who flatly contradicted the statements
contained in the affidavits of Catlin and Clark.

The court granted a new trial. The appeal is from this
order.

*James Donovan*, for Appellant.

*Duglas Martin* and *M. M. Lyter*, for Respondent.

BUCK, J.—It appears from the record that the only sub-
stantial conflict in the evidence on the trial was as to the value
of the horses. The evidence on this subject was as follows :
A witness for defendant, one Catlin, admitted that the value
of the horses was $125. The amount realized on the execu-
tion sale of them by the constable was $180. A witness for
plaintiff, one Wilber, testified that, in his opinion, the horses
were worth $250 at the date the constable seized them, on
February 25, 1895.

The respondent contends that the only evidence to sustain
the jury in finding these horses worth $250 is that of Wilber,
and that one of the reasons of the court for granting a new
trial was that said Wilber was not a witness qualified or com-
petent to testify that these horses were worth $250. A por-
tion of the testimony of said Wilber is as follows : ''I reside
at Great Falls, and my business is transfer business, in which
I have been engaged for a little over seven years. I think I

have eighteen horses now that I use in my business. I know the team in question. I know pretty nearly, I guess, what the market value of such horses as are in · controversy here was in February last in the city of Great Falls and neighborhood. I do not know what the market value of horses was. I think this team was worth $250.''

There was no objection to the testimony of Wilber, but, even if there had been, it should have been overruled. It is true that he apparently contradicts himself in what he says as to his knowledge of the market value of horses in Great Falls in the month of February. It was within the province of the jury, however, to determine whether this contradiction detracted from the weight of his testimony.

From the record it is apparent that both the lower court and the attorney who tried the case for defendant misunderstood the rule of law applicable to the proof of the market value of these horses. This appears in several places.

The examination of one McGovern, who knew the horses (a witness for plaintiff), was as follows :

''My business in the past six or seven years has been general team work, freighting and all kinds of team work. In my freighting I have been handling heavy horses, from twelve to sixteen hundred. I have been using those horses, freighting in the vicinity of Great Falls and Fort Benton, all through this country here. I have been engaged in that kind of work since 1887. That time has been put in in Montana, in and about Great Falls.''

. ''Q. 'State what, in your opinion, this team was worth at that time.' (Defendant objects to the question, because the witness has not been shown competent to know the market value of horses in the vicinity of Great Falls at that time. Objection sustained.)

''Q. 'You may state whether or not you are acquainted with the value of such a team as the team in question on February last.' (Defendant objects to the question, upon the ground that it is immaterial and irrelevant. The market value is the true criterion. Objection sustained.)

"Q. 'You may state what, in your opinion, this team was worth in February, 1895.' (Defendant objects to the question, upon the grounds urged in the last objection. Objection sustained.)"

The rulings of the court as to McGovern's testimony, and as to the testimony of other witnesses introduced by the plaintiff for the purpose of proving value, were clearly erroneous. It was impossible to determine the exact market value of these horses in the month of February. They had not been sold. All the law required of the plaintiff was to show what they would reasonably have brought had they been sold. The rule as to what qualifies or renders a witness competent to testify as to the market value of an animal so common as the horse is not the same as one governing witnesses who are to give evidence as to some scientific subject with which experts alone are conversant. There are few persons of common understanding in any part of this state who do not possess some general knowledge both as to the character and value of horses in their respective localities. The subject is one made generally familiar through the experience, personal or observed, of everyday life. Therefore it requires very little to qualify and render a witness competent to testify on the subject of the value of horses in the locality in which he resides. The witness McGovern, possessing, as he did, a long personal experience with horses in and about Great Falls, was fully qualified to express his opinion to the jury as to what this team was worth in the month of February; and whether he could recall any particular sales of horses in said month or not made no difference. It was proper for the jury to consider his opinion in determining the market value of these horses.

It would seem from these rulings that the lower court entertained the view that the only manner in which plaintiff could have established the market value of these horses was through witnesses who were both expert horsemen and familiar with the transactions in horses in Great Falls during the month of February. Such a view of the law is unsound. There was

testimony to sustain the verdict of the jury in this respect. Defendant admitted that the horses were worth $125. At a forced sale under an execution they had brought $180. And the witness Wilber, who was unimpeached and qualified to express the opinion, stated that, in his opinion, they were worth $250 at the time they were seized. Under these conditions, the lower court had no right to set aside the verdict for insufficient evidence as to value.

The question put upon cross-examination, as to whether the plaintiff, Holland, authorized Olson to tell it around the country that these horses belonged to him, was properly excluded. No evidence had been introduced by defendant to show that Olson was the owner of the horses. The answer pleads no estoppel as to Holland. It was not suggested that Holland, by allowing Olson to have the custody of these horses, had misled any one into giving the latter credit. The court stated that it would not permit the question at that stage of the trial, and defendant made no effort to lay a foundation for the introduction of any such testimony.

It is assigned as error that the court refused to strike out the testimony of a witness as to a conversation he had had with Catlin.

The court instructed the jury that the conversation should not be considered as affecting defendant. The error in the admission of it, if any, was cured by the instruction.

The instructions objected to stated the law correctly. The instruction referred to in assignment of error numbered 4 does not comment upon the evidence; it simply mentions it.

Was the showing of newly-discovered evidence sufficient to justify the court in granting a new trial? We think not. It is stated by Catlin in his affidavit that he had learned that one George Pannick would testify to certain things. For all that appears, his knowledge of what Pannick would testify to was obtained through hearsay sources only. Moreover, there is a flat contradiction in his statement that he had learned since the trial that Pannick would testify to certain facts, and the subsequent statement contained in his affidavit that he had

tried to ascertain Pannick's whereabouts before trial.   He certainly must have had reason to believe that Pannick could furnish him with some evidence if he inquired for him before the trial.    A mere inquiry of an ex-sheriff of another county, however, shows no sufficient diligence for obtaining the testimony Pannick might possibly have given at the trial.

Handley, who, Catlin and Clark swear, told of having had a conversation with the plaintiff, Holland, swears positively that he did not make any such statement to Catlin; and we fail to see, under this condition of affairs, wherein the defendant would have been benefitted by having Handley called as a witness on another trial.

An appellate court does not, as a rule, interfere with the discretion possessed by a trial court in granting or refusing a new trial; but, when it appears that such discretion has been exercised without any sufficient or substantial reason, it must be controlled.

The cause is remanded, with directions to the lower court to set aside its order granting a new trial.

*Remanded.*

PEMBERTON, C. J., and HUNT, J., concurs.