CASE ET AL., RESPONDENTS, *v.* KRAMER, APPELLANT.

(No. 2,185.)

(Submitted April 11, 1906. Decided April 21, 1906.)

*Contracts— Sales—Part Payment—Statute of Frauds— New Trial—Principal and Agent—Appeal.*

New Trial—When Order Granting Motion Will be Affirmed.
    1. An order granting a motion for a new trial, which does not designate upon which of a number of grounds mentioned in the motion it was made, will be affirmed if justified by any one of them.
New Trial—District Courts—Discretion—Review.
    2. For errors at law occurring during the trial prejudicially affecting the rights of the moving party, a new trial may be demanded as a matter of right, and where such errors are made manifest, the district court has no discretion but should grant the motion.
New Trial—Newly Discovered Evidence—Insufficiency of Evidence—District Courts—Discretion.
    3. A motion for a new trial on the ground of newly discovered evidence, or insufficiency of the evidence to justify the verdict, is addressed to the discretionary power of the trial court, and its action thereon will not be disturbed on appeal unless it appears that there has been a clear abuse of such power.

New Trial—Conflict in Evidence—Appeal—Affirmance.
    4. Where the record on appeal shows that upon every issue presented by the pleadings the evidence introduced involves an irreconcilable conflict, an order granting a new trial will be affirmed.

Contracts of Sale—Part Payment—Effect—Statute of Frauds—Principal and Agent.
    5. Defendant in an action for the breach of a written contract had orally instructed his agent to sell a large number of cattle for him and to require payment of part of the purchase price. A purchaser was found, a check for $5,000 as part payment accepted by the agent and placed to the credit of defendant in bank, and a written agreement entered into between the purchaser and the agent acting for defendant. Defendant thereafter refused to deliver the cattle, claiming that the agent had exceeded his authority, and that the contract was void in that the authority of the agent to make the sale was not in writing. *Held,* that payment of part of the purchase price brought the transaction within the exception provided for in section 3276 of the Code of Civil Procedure and sections 2185 and 2340 of the Civil Code, relative to contracts which must be in writing, and that therefore the provisions of section 3085 of the Civil Code, declaring that authority to enter into a contract required by law to be in writing can only be given by an instrument in writing, has no application and that the contract was valid.

Principal and Agent—Sales—Payment—Checks.
    6. While an agent authorized to receive payment of money should accept cash only, yet where one employed to sell cattle accepted as part payment a check payable to the order of the principal, indorsed it for collection and subsequently cashed it and placed the money in bank to the credit of his principal, the latter cannot complain, and it is immaterial that the check, made payable to the principal, had been indorsed in his name for collection by the agent without special authority to that effect, inasmuch as the principal actually received the money.

New Trial—Specifications of Error—Sufficiency—Appeal.
    7. Specifications of error, alleged to be insufficient to point out the particulars in which the evidence fails to justify the verdict, which give the defendant notice and advise the court in plain language of the matters that would be urged upon the hearing of a motion for a new trial, will be deemed sufficient.

*Appeal from District Court, Dawson County; C. H. Loud, Judge.*

ACTION by W. E. Case and another against M. L. Kramer. From an order granting a new trial to plaintiff after verdict and judgment for defendant, he appeals. Affirmed.

*Mr. George W. Farr,* and *Mr. O. F. Goddard,* for Appellant.

The contract sued on made by Courtney as an agent for Kramer was in writing. Courtney did not have any written authorization of agency. The value of the property involved in the al-

leged contract is sufficient to bring the contract under the provisions of sections 2185 and 2340 of the Civil Code and section 3276 of the Code of Civil Procedure. The contract was one required to be in writing and the authority of the agent to enter into the contract under section 3085 of the Civil Code was required to be in writing.

Upon the uncontradicted evidence in this case, it is for the court to determine whether there was in fact an agency, either actual or ostensible, and the burden of proof was upon the plaintiffs, the parties affirming the relation, and it is required that the proofs be clear and specific in order to bind the principal. (Am. & Eng. Ency. of Law, 2d ed., 968, cases cited; *Booker* v. *Booker,* 208 Ill. 529, 100 Am. St. Rep. 250, 70 N. E. 709; *Montgomery* v. *Pacific Coast Land Bureau,* 94 Cal. 284, 28 Am. St. Rep. 122, 29 Pac. 640; *Herbert* v. *King,* 1 Mont. 482; *Brophy* v. *Idaho Produce etc. Co.,* 30 Mont. 279, 78 Pac. 493.)

Courtney had no authority, either express or implied, to accept a check as part payment of the purchase price of the cattle in question. "No ruling in law is better established than that, in the absence of express authority otherwise from his principal, the agent cannot bind his principal by accepting payment in any other medium than money. The agent has no implied authority to receive payment in drafts, bills of exchange, or checks." (See statement of rules and authorities cited in 22 American and English Encyclopedia of Law, second edition, 522.) The principal may, it is true, so act that he will be held to have waived objection to such payment or to have ratified the agent's act, and thus be bound thereby. (*Ormsby* v. *Graham,* 123 Iowa, 202, 98 N. W. 730; *Jackson* v. *National Bank,* 92 Tenn. 154, 36 Am. St. Rep. 81, 20 S. W. 802, 18 L. R. A. 663; Tiedeman on Sales, p. 465, sec. 269. See Civil Code, sec. 3072.) Courtney's authority, being in its nature limited, its scope must not be exceeded, and his authority must be strictly pursued, and if it is not, the principal will not be bound. (Mechem on Agency, sec. 288, and numerous cases there cited; *Strickland* v. *Council Bluffs Ins. Co.,* 66 Iowa, 466, 23 N. W. 926; *Davis* v. *Robinson,*

67 Iowa, 355, 25 N. W. 280; *Saginaw etc. Ry. Co.* v. *Chappell,* 56 Mich. 190, 22 N. W. 278; *Gilbert* v. *Deishon,* 107 N. Y. 324, 14 N. E. 318.)   And an agent is not permitted to depart from the usual manner of effecting what he is employed to effect. (Story on Agency, sec. 60; *Helena Nat. Bank* v. *Rocky Mountain Teleph. Co.,* 20 Mont. 391, 63 Am. St. Rep. 628, 51 Pac. 829.) It is the duty of a person dealing with an agent to inquire into the nature and extent of his authority and deal with him accordingly, and they deal with him at their peril.   (1 Am. & Eng. Ency. of Law, 2d ed., p. 994; *Roberts* v. *Rumley,* 58 Iowa, 301, 12 N. W. 323; *Martin* v. *Farnsworth,* 49 N. Y. 555.)

And one is not permitted to trust to mere presumption of authority, or to any mere assumption of authority by the agent, and reasonable prudence must be exercised, and if there is anything about the agent's pretension of authority which is unusual or improbable, one should inquire before dealing with an agent. (*Dyer* v. *Duffy,* 39 W. Va. 148, 19 S. E. 540, 24 L. R. A. 339; Mechem on Agency, secs. 289, 290; *Leu* v. *Mayer,* 52 Kan. 419, 34 Pac. 969; *Bohart* v. *Oberne,* 36 Kan. 284, 13 Pac. 388.)

In this there is an important distinction between a general and a special agent.   The one dealing with a special agent is held to the strictest inquiry; nothing is to be assumed or presumed. (Parsons on Contracts, 39; *Anderson* v. *Coonley,* 21 Wend. 279.)

*Mr. T. J. Porter,* and *Mr. Sydney Sanner,* for Respondents.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought to recover damages for the breach of a written contract, under the terms of which, it is alleged, defendant on November 27, 1899, sold to plaintiffs, as copartners, certain cattle and agreed to deliver them at any time from May 1 to 15, 1900, at a designated place in Dawson county.   It is alleged by plaintiffs that they negotiated the contract with defendant through one Courtney, defendant's agent, duly empowered to act in that behalf; that they made a cash payment

of $5,000 required by its terms, which was received and retained
by the defendant; that they were ready and able to make pay-
ment of the balance of the purchase price at the time and place
of delivery, as well as to comply with all the terms and condi-
tions of the contract to be by them performed; but that de-
fendant failed to perform the contract on his part by refusing
to deliver the cattle at the time and place agreed upon, or at all,
to the plaintiffs' damage in the sum of $15,000. A copy of the
contract is set forth in the complaint. It recites the different
classes of cattle sold and the price per head to be paid for each
class, and includes all the cattle bearing the brands of the de-
fendant at the date of its execution, "with the calves thrown in
and not to be paid for." The receipt of $5,000 in cash is ac-
knowledged. The answer is a general denial. A trial upon the
issues thus presented resulted in a verdict and judgment for de-
fendant. By a general order the court granted plaintiffs' mo-
tion for a new trial. From this order the defendant has ap-
pealed.

The grounds of the motion are errors of law in rulings upon
the admission and exclusion of evidence, and in instructing the
jury, and insufficiency of the evidence to justify the verdict.
Since the order does not designate upon which of the grounds
mentioned it was made, it must be affirmed if justified by any
one of them.

Respondents insist that the granting of a motion for a new trial
rests entirely in the discretion of the trial court, and that for that
reason the order appealed from should be affirmed. For errors at
law prejudicially affecting the rights of the movant, a new trial
may be demanded as a matter of right. In such case the court
has no discretion, if the error is made manifest. (*State* v.
*Schnepel,* 23 Mont. 523, 58 Pac. 868.) When the ground is
newly discovered evidence or insufficiency of the evidence to jus-
tify the verdict, the motion is addressed to the discretionary
power of the court, and its action in the premises will not be
disturbed by the appellate court unless it appears that there has
been a clear abuse of this power. (*State* v. *Schnepel, supra;*

*In re Colbert's Estate,* 31 Mont. 477, 107 Am. St. Rep. 439, 78 Pac. 971, 80 Pac. 248; *Gillies* v. *Clarke Fork Coal M. Co.,* 32 Mont. 320, 80 Pac. 370; *Hamilton* v. *Nelson,* 22 Mont. 539, 57 Pac. 146; *Harrington* v. *Butte & Boston M. Co.,* 27 Mont. 1, 69 Pac. 102; *Rand* v. *Kipp,* 27 Mont. 138, 69 Pac. 714; *State* v. *Landry,* 29 Mont. 218, 74 Pac. 418.)

An examination of the record reveals the fact that upon every issue presented by the pleadings the evidence introduced at the trial involves an irreconcilable conflict. For this reason alone, we are of the opinion that the order of the district court was properly made.

It appears from the testimony introduced by the plaintiffs that during the latter part of August, 1899, the defendant, being desirous of closing out his cattle interests in Dawson county, went to one William Courtney, a broker in Miles City, Custer county, and listed his stock with him for sale, stating to him the character of the different classes of cattle he had and the prices he asked. He thereupon dictated a circular letter, to be addressed by the broker to various persons who might desire to buy his cattle, stating the terms upon which he wished to sell. Among other things this circular letter stated the number of steers of various ages owned by the defendant, and also of cows and heifers. It also stated that there had been branded the preceding spring one hundred and forty-four calves, that there would probably be branded that fall fifty or sixty more, and that under the terms of the sale the calves would be thrown in. A cash payment of $5 per head, amounting to $5,000, was required. The place of delivery designated was Miles City stockyards. He thereupon went to his home, some one hundred and twenty-five miles away, in Dawson county. In the meantime, and prior to November 24th, there was some correspondence between himself and Courtney as to the sale of the cattle; and on or about November 13th Courtney wrote the defendant that he had possibly secured a purchaser for his cattle to be delivered at a designated place in Dawson county on or about May 15th, upon the conditions and at the prices fixed by the defendant.

On November 24th the defendant went to Miles City and saw Courtney. According to Courtney's statement, he was then told by the defendant to close up the sale. On leaving Miles City the defendant met plaintiff Case a short distance from the town, and, in a conversation then had with him with reference to the purchase of the cattle, told him to go to Courtney and buy the cattle. On November 27th, after negotiations between Case and Courtney extending over two or three days, Case bought the cattle at the stipulated price and paid the $5,000 required by the defendant. This he paid to Courtney by his check, which was afterward deposited by Courtney in one of the banks in Miles City, and paid to the credit of the defendant. The memorandum set forth in the complaint was then drawn by Courtney and signed by the plaintiff Case on behalf of himself and his coplaintiff, and by Courtney for the defendant. Courtney immediately notified the defendant by mail, inclosing a copy of the contract. So the matter stood until about December 29th. The defendant then visited Miles City and called on plaintiff Case. Referring to the contract of sale entered into by Courtney in his behalf, he said to Case that he would not deliver the cattle under the terms of the contract, unless Case and his coplaintiff would pay him an additional $5 per head for one class of cattle designated in the contract as Colorado cattle. This additional demand amounted to $1,300. Case refused to make this concession. Thereupon Kramer notified the bank that he would not accept the money and also wrote to plaintiffs that he did not intend to abide by the contract. At the same time he also wrote Courtney saying that he would not ratify the contract and that his reason therefor was that in making it Courtney had not obeyed his instructions. Kramer denied that he had a conversation with Case on November 24th or at any other time, referring him to Courtney. He denied that he ever authorized Courtney to enter into any contract of any character or description for him with reference to the cattle, or to accept any payment for him of a part of the purchase price. He stated that he employed Courtney for the sole purpose of finding him a purchaser with whom he intended to arrange the terms of the sale himself, with-

out the intervention of any agent. It does not appear that Kramer specially authorized Courtney to enter into a written contract, nor that he indicated how the cash payment should be made. Upon these facts we do not think the court abused its discretion in granting the order.

Counsel say, however, that under section 3276 of the Code of Civil Procedure, and sections 2185 and 2340 of the Civil Code, the contract of sale, in order to be valid, must have been in writing and signed by Kramer or his duly authorized agent, and since it does not appear that Courtney's authority was in writing, the contract as made by him was void. In support of this contention they cite also section 3085 of the Civil Code. This section declares: "An oral authorization is sufficient for any purpose, except that an authority to enter into a contract required by law to be in writing can only be given by an instrument in writing." The fallacy involved in the contention is the assumption that the contract falls in the class of those that must be evidenced by writing, under the sections of the Civil Code and of the Code of Civil Procedure, *supra.*

Under the instructions given by Kramer to Courtney, a part of the purchase price was to be paid down, and this was done. This brings the agreement clearly within the exception provided for in the sections cited with reference to the sale of chattels. Section 3085, *supra,* therefore has no application. If the contract had been negotiated by Kramer himself and had been oral, the part payment to him would have brought it within the exception. Since this is so, oral authority to Courtney to act for him in the making of the contract was valid; for under section 3085, *supra,* Kramer could orally authorize Courtney to make for him any contract which he himself might make orally. Nor was the relation of the parties or the authority of Courtney changed by the fact that Courtney, doubtless for safety, drew up and signed the memorandum for Kramer. It cast no greater burden upon Kramer than it would had it been left to rest entirely upon oral evidence. If Courtney had authority to act for Kramer, as this evidence tends to show, the latter could not,

after the agreement was made, repudiate it and deny its liability.

Counsel also contend that Courtney had no authority to accept Case's check to meet the cash payment required. If Case's testimony touching his conversation with Kramer on November 24th, in which he was told to go to Courtney to make the purchase, is to be accepted as true—and for present purposes it must be so accepted—Courtney had ostensible authority to negotiate the sale, and in connection therewith to do everything necessary, proper and usual in the ordinary course of business for effecting the purpose of his agency. (Civ. Code, secs. 3093, 3095.) But we are not now called on to inquire whether it is usual or customary in such transactions to make payments in checks. The check given by Case and accepted by Courtney was afterward actually cashed by the drawee, and the amount thereof paid by Courtney to the credit of Kramer. It is the rule that an agent, under his authority to receive payment, may not accept anything but cash. (1 Am. & Eng. Ency. of Law, 2d ed., 1003; Mecaem on Agency, 321.) Yet, if the check received is actually paid by the drawee, this constitutes payment to the principal, even though the agent misappropriates the fund and converts it to his own use. (Mechem on Agency, 382; *Sage* v. *Burton*, 84 Hun, 267, 32 N. Y. Supp. 1122; *Kansas City etc. R. R. Co.* v. *Ivy Leaf Coal Co.*, 97 Ala. 705, 12 South. 395; *Harbach* v. *Colvin*, 73 Iowa, 638, 35 N. W. 663; *Bardwell* v. *American Express Co.*, 35 Minn. 344, 28 N. W. 925.) Nor is it of importance that the check made payable to the order of Kramer was indorsed in his name for collection by Courtney without special authority. The money went to Kramer's account, and thus he actually received it.

Appellants contend, further, that the specifications are not sufficient to point out the particulars wherein the evidence is alleged to be insufficient to justify the verdict. The objections made to them are general and to the effect that, instead of setting out what the evidence does not show, they urge what the evidence does show. We think, however, that the specifications

are sufficient to give to the defendant notice, and to advise the court in plain language of the matters that would be urged upon the hearing of the motion. Such being the case, the order should not be reversed on the ground of their insufficiency. (*Gillies v. Clarke Fork Coal M. Co., supra,* and cases cited therein.)

Since, for the reasons stated, it was within the sound discretion of the district court to direct a new trial, it is not necessary to discuss the other points presented. The order is affirmed.

*Affirmed.*

MR. JUSTICE HOLLOWAY concurs.

MR. JUSTICE MILBURN, being disqualified, did not hear the argument and takes no part in the foregoing opinion.