HINTON, Appellant, *v.* PETERSON et al., Respondents.

No. 8617

Submitted February 20, 1946. Decided April 19, 1946.

169 Pac. (2d) 333

Mr. G. J. Jeffries, of Roundup, and Mr. J. E. McKenna, of Lewistown, for appellant.

Mr. W. W. Mercer, of Roundup, and Mr. Ralph J. Anderson, of Helena, for respondents.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This action was to recover wages as a ranch hand, irrigator, foreman and manager from April 17, 1939, to July 20, 1941. The complaint alleges that the services were of the reasonable value of $75 per month and were performed by plaintiff at the instance and request of defendants. Certain credits were allowed and pleaded in the complaint, leaving an alleged balance due of $1,502.36 with interest.

Defendant Ogle filed a general denial and defendant Peterson by separate answer admitted that the services were rendered but alleged that the agreed compensation was $40 per month. She also alleged that plaintiff was to pay the reasonable market price for hay, grain and pasture which was furnished by her for his horses; that she was entitled to more credits than those admitted in the complaint and that in consequence there was a balance only of $299.36 due, which was tendered and deposited with the clerk of the court.

Plaintiff, by his reply, denied the affirmative allegations of the answer and alleged that his horses were worked and used on defendant's ranch with the understanding that pasture and feed should be furnished for all of plaintiff's horses.

The jury returned a verdict for plaintiff against both defendants in the sum of $1,756.39 with interest for $316.15. The verdict itemized the award as follows:

| | |
|---|---|
| "27 months at $75 | $2,025.00 |
| Total cash account | 268.61 |

Leaving 1,756.39
Interest for 3 yrs. at 6% 316.15''

The verdict was irregular in that there were other credits aggregating $254.03 which were conceded by plaintiff in his complaint at the trial to be proper and which the jury did not take into consideration in arriving at its verdict.

Hereinafter we shall point out the effect of this irregularity. Defendants moved for a new trial and plaintiff on the same day filed a consent to the remission of the jury's verdict from $2,072.54 to $1,718.90, the difference of $353.64 representing the erroneous calculation of interest and failure to allow the credits which were admitted in the pleadings, and moved that the judgment be modified accordingly. The court denied plaintiff's motion and consent to remit and granted defendant's motion unless plaintiff filed a consent to reduce the verdict to $577.36 principal, computed at $40 per month for 27 months, less the credits admitted by plaintiff in the sum of $522.64, together with interest at 6% from July 20, 1941 with costs. Plaintiff did not consent to the reduction, hence the order became final. This appeal is from the order granting the new trial. Defendants contend that the propriety of denying plaintiff's consent to have the judgment reduced cannot be reviewed on the appeal from the order granting a new trial. It is our view that so far as the new trial is based upon the excessiveness of the verdict because of this item, it is proper for us to consider it.

It will be seen from the foregoing that the court's action in granting the new trial was based upon the view of the court that the evidence was insufficient to support the verdict. The court and the jury seemingly agreed upon all features of the case, regarding hay and pasture for plaintiff's horses. The court disagreed with the jury on the issue of the terms of the contract of employment. The court accepted defendants' version of it while the jury accepted that of plaintiff.

As to the item of $254.03, plaintiff concedes that it should have been allowed as a credit and hence with the excess interest

the verdict is too large by $353.64, and filed his consent to a reduction of the judgment in that amount. As to that amount the court should have granted plaintiff's motion to correct the judgment. There was no issue regarding the item of $254.03. It was conceded by plaintiff to be a proper credit. That item not being in issue in the case, the jury had no power to disregard it. Its omission in the verdict as a credit must be treated as an irregularity due to oversight. In the respects above noted this case differs from that of Blessing v. Angell, 66 Mont. 482, 214 Pac. 71, relied upon by defendants wherein this court held that the verdict could be accounted for only on the theory of passion and prejudice and therefore ordered a new trial. This case, so far as it concerns the credit of $254.03 and the excess interest, is more nearly parallel with that of Mosher v. Sanford-Evans Co., 68 Mont. 64, 216 Pac. 811. Compare also Sinclair Ref. Co. v. Larson, 51 S. D. 443, 214 N. W. 842, and note in 67 A. L. R. 844. So far as the item of $353.64 is concerned, the court could and should have corrected the judgment and the overlooked item furnishes no basis for the granting of the motion for new trial. Had this been the only point involved, the court doubtless would have ordered the correction made without granting a new trial.

Defendants contend that the order granting the new trial was proper upon the ground that the evidence was insufficient to sustain the verdict in that defendants submitted proof which satisfied the court that plaintiff was employed under a definite contract whereby he was to receive $40 per month. Plaintiff testified that the agreement was that he was to receive better than the going wages. He testified that he was the manager and superintendent or foreman of the ranch and that as such he directed the ranching operations and in addition worked with the other men in doing the ordinary ranch work; that he himself did all the irrigating and that during the irrigating season he worked from 4 in the morning until 10 or 11 o'clock at night, and seven days a week. Other disinterested witnesses corroborated him in these matters. He testified that the reasonable value

of his services was $75 per month. Two or three disinterested witnesses also corroborated him on this point and, in fact, one witness placed the value of his services at $90 to $100 per month and another at $80 or $90 per month.

It was shown that in a prior complaint filed by plaintiff it was alleged that he was employed at $50 per month. This he explained by saying that he placed the amount as low as possible hoping in that manner to effect a settlement. It was also conceded by plaintiff that he had previously been convicted of a felony.

From these facts defendants argue that the court in its discretion properly granted a new trial and that this court should not interfere with the court's discretion.

There are cases which hold that the matter of granting a ██ new trial for insufficiency of the evidence to justify the verdict rests in the discretion of the trial court. Thus in Walsh v. Butte, Anaconda etc. Ry. Co., 109 Mont. 456, 97 Pac. (2d) 325, this court, following a number of earlier cases therein cited, declined to interfere with an order granting a new trial upon the ground that it was a discretionary matter for the trial court. In that case it should be noted that the order granting the new trial was general without any intimation as to what ground furnished the basis for the order. The same is true of the case of Brennan v. Mayo, 100 Mont. 439, 50 Pac. (2d) 245. We think the rule stated in these cases is too broad to be applied to every case. If there is substantial evidence supporting the verdict, then it will not do to say that the evidence is insufficient to support the verdict. The court's discretion is exhausted when it finds substantial evidence in support of the verdict. Finding substantial evidence in the record to support the verdict, it would be unwarranted action to grant a new trial. We have here no situation where the evidence offered by plaintiff is contrary to physical facts, inherently improbable or otherwise unworthy of belief on its face as was the case in Morton v. Mooney, 97 Mont. 1, 33 Pac. (2d) 262, and in other cases therein cited. Here there was ample, credible evidence submitted by

and in behalf of plaintiff to sustain the jury's verdict. The weight of the evidence and the credibility of witnesses are exclusively for the jury. Section 10508, Revised Codes. And the direct evidence of one witness, who is entitled to full credit, is sufficient for proof of any fact, except perjury and treason. Section 10505, Revised Codes.

There being nothing inherently unreasonable or improbable in plaintiff's version of the terms of his employment and it being corroborated in practically all respects by other witnesses, he made out a case for the jury and it will not do for the judge of the trial court to attempt to substitute his judgment for that of the jury by granting a new trial. If he may do so once, he may do so again upon a like verdict and in that manner prevent final determination of the case.

What was said in Strode v. Strode, 194 Ky. 665, 240 S. W. 368, 372, 27 A. L. R. 313, is here applicable. It was there said: "Evidently each case must be determined upon its own peculiar facts and circumstances; but, whatever may be the true circumscribing limits of the terms referred to, we are satisfied that it was never intended to be announced by this or any other court as a sound doctrine that a trial court exercises 'a sound discretion,' with no authority to interfere by a reviewing court, in granting a new trial for insufficiency of evidence to support the verdict when it was equiponderant (or nearly so) and the finding of the jury would be undoubtedly proper and sustainable if rendered either way. Clearly in that case there is an abuse of discretion within the rule and the duty of the reviewing court to interfere by exercising its authority arises. A contrary holding would lodge with the trial court the power to retain a case on the docket indefinitely, or until a jury could be found which would return a verdict in accordance with its conception of the facts, notwithstanding the evenly balanced condition of the testimony. Such a discretion, if possessed by the court, would not only be an unwarranted encroachment upon the proper and legitimate functions of the jury, but it would

tend to delay the final disposition of causes, not to mention the arbitrary power with which it would vest trial courts.''

In 39 Am. Jur. ''New Trial,'' sec. 133, it is said: ''In the trial of civil cases, it is the province of the jury to consider the whole volume of testimony, estimate and weigh its value, accept, reject, reconcile, and adjust its conflicting parts, and be controlled in the result by that part of the testimony which it finds to be of greater weight. The jury is the exclusive judge of the evidence, and must in reason be the exclusive judge as to what constitutes the preponderance of the evidence. Accordingly, where the jury have reached a conclusion after having given consideration to evidence which is sufficient to support a verdict, the decision should not be disturbed by the court.'' And in section 137 it is said: Where the determination of an issue of fact depends upon the credibility of witnesses and a jury would be justified in coming to a conclusion either way, according to the credence to be given to the testimony on the one side and on the other, the issue is deemed to have been one for the jury's determination, even though the court is convinced as to where the truth lies, and a new trial will not be ordered. If the verdict is a conclusion to which twelve honest men, acting fairly and intelligently, might come then it is final and cannot be disturbed; if the trial judge should set it aside, he would himself be in error, as passing the bounds of his own proper function and invading the province of the jury. * * *

''A verdict will not be set aside as contrary to evidence * * * because of admissions against interest on the part of the successful litigant.''

This case calls for application of the rule applied in Ormund v. Granite Mt. Min. Co., 11 Mont. 303, 28 Pac. 289, 291.

In that case plaintiff and six witnesses testified favorable to plaintiff's view of the facts whereas 13 witnesses testified to the contrary in behalf of defendant.

The jury found for defendant. The court granted a new trial on the ground of the insufficiency of the evidence to justify the verdict and this court said: ''We think that the verdict was

amply supported by the testimony, and that the court abused its sound legal direction [discretion] in granting the motion for a new trial.''

The case of Badboy v. Brown, 66 Mont. 307, 213 Pac. 246, 247, also holds that the right of the trial court in granting or refusing a new trial is not unrestricted. In that case the point under consideration was whether the damages were excessive but that in turn depended upon the evidence on the point.

The jury returned a verdict for plaintiff in the sum of $650. The court granted a motion for new trial unless plaintiff would remit all damages in excess of $250.

This court, after referring to the conflicting evidence on the issue of damages, said: ''While it is the general rule, frequently enunciated by this court, that the granting or refusing of a motion for a new trial rests in the sound legal discretion of the trial court, yet this discretion is not so unrestricted as to permit the trial court to act arbitrarily, or without substantial basis. Legal discretion must always be guided and controlled by legal principles. Montana O. P. Co. v. Boston & M. C. C. & S. M. Co., 22 Mont. 159, 56 Pac. 120. This court will not, as a rule, interfere with the discretion vested in the trial court in granting or refusing a new trial; but when it appears, as it does in this case, that such discretion has been exercised without any sufficient or substantial reason, then it must be controlled. Holland v. Huston, 20 Mont. 84, 49 Pac. 390. Here the abuse of discretion on the part of the trial court in granting to the defendant Brown a new trial is manifest, for there is no evidence or basis in the record for the court's order. 'Under the statute, the amount of the verdict must of necessity rest in the sound discretion of the jury. The parties are entitled to a verdict from the jury, and it is only in rare instances that the court is justified in interfering, unless the record discloses that the elements of passion and prejudice have influenced the minds of the jurors in arriving at the result.' Hollenback v. Stone & Webster Eng. Corp., 46 Mont. 559, 129 Pac. 1058. The jury having fixed the amount of plaintiffs' damages based on evidence war-

ranting the verdict, and there being nothing in the record to indicate passion and prejudice, or warranting a reduction of the amount of the verdict, the trial court was clearly in error.''

As above noted there is nothing inherently improbable or incredible in the evidence offered by plaintiff. In most respects it was corroborated by the testimony of other witnesses. Under the circumstances here involved we hold that the court abused its discretion in granting the motion for a new trial.

The cause is remanded with directions to set aside the order granting and to enter an order overruling the motion for new trial, and to enter an order granting plaintiff's motion to modify the judgment by allowing the credit of $254.03 with interest amounting in all to $353.64, and as thus modified the judgment will stand affirmed.

Associate Justice Adair and Cheadle concur.

Mr. Chief Justice Lindquist takes no part.

Mr. Justice Morris (dissenting).

I dissent. The evidence is in sharp conflict. In such circumstances the rule has heretofore been followed by this court and others generally that where the trial court has granted a motion for a new trial its decision will not be disturbed on appeal. This court said in the case of State v. Anderson, 92 Mont. 313, 13 Pac. (2d) 228, 229: ''Where the evidence is conflicting, the granting or refusing of a new trial is lodged in the sound legal discretion of the trial court, and its action will not be disturbed unless there has been a manifest abuse of discretion. Fournier v. Coudert, 34 Mont. 484, 87 Pac. 455; Case v. Kramer, 34 Mont. 142, 85 Pac. 878; McVey v. Jemison, 63 Mont. 435, 207 Pac. 633; Gardiner v. Eclipse Grocery Co., 72 Mont. 540, 234 Pac. 490; Backer v. Parker-Morelli-Barclay Motor Co., 87 Mont. 595, 289 Pac. 571; Russell v. Sunburst Refining Co., 83 Mont. 452, 272 Pac. 998.'' See also Wibaux Realty Co. v. Northern P. Ry. Co., 101 Mont. 126, 139, 54 Pac. (2d) 1175.

Aside from the rule just mentioned the evidence, in my opinion, clearly preponderates in favor of the defendants. The picture presented by the record shows that the plaintiff was fully

as anxious to find a place where he could run, care for, breed and break his horses of which he owned from 40 to 60 head, as he was to earn a salary as a ranch hand. He was a horse fancier, and some ten head or more of his horses were blooded racing stock. With the idea in view of finding such a place he would not consider accepting Mrs. Peterson's offer of a job until he had looked over her ranch. Looking it over was no doubt for the purpose of determining whether or not he could handle his horses at the Peterson place, have a place to live and at the same time draw moderate wages. The compensation that moved him to accept the offer made by Mrs. Peterson was the $40 per month which she entered on her books as his monthly wage and in addition have a place where he could run and care for his horses. The plaintiff's wages ran the year around, and it is obvious that he did very little work for Mrs. Peterson during the winter months. He repeatedly emphasized in his testimony his work as an irrigator. It is a matter of common knowledge that irrigating growing crops, either hay or grain, is confined practically to the months of May, June, July, and a part of August, and heavy irrigation seldom begins before the middle of June. The plaintiff testified that most if not all the first crop of alfalfa was cut for hay and the later growth was cut and threshed for seed. It is also a matter of common knowledge that alfalfa grown for seed is not irrigated. Plaintiff also dwelt upon his services as foreman or superintendent. The plaintiff was the only year around employee on the Peterson ranch, familiar with the ranch work and would naturally be expected to lead the crew. Other employees hired for haying and harvesting rarely remained more than two months, and the only evidence that the plaintiff was foreman was that he took the lead in carrying on the work. Mrs. Peterson is clearly shown from the record to have done the "hiring and firing" of the ranch help. She worked in the haying fields along with the hired help, doing more in the matter of getting the hay crop in than did the plaintiff. There is no evidence that the plaintiff was anything more in the working force on the ranch than that he was a steady

employee and the others transient. The evidence is in direct conflict with the plaintiff's contention that he was to have a monthly wage of $75 and the most pertinent part of such evidence comes from the acts of the plaintiff: The first complaint he filed in this action set out that his services were worth $50 per month. Thereafter he filed an amended complaint raising the value of his monthly services to $75; after he quit work at the Peterson ranch a memorandum introduced in evidence as defendants' exhibit 2 was found in his room, in which he attempted to make out a statement of his account with Mrs. Peterson. Her name appears at the head of the statement, and is followed by ''Went to work April 17, 1939,'' then follows a memorandum of sundry purchases made for him by Mrs. Peterson or by someone acting for her and money paid him on account. Items such as overalls, tobacco, cash, etc., are set down and the list of entries totaled and deducted from the figures ''480.'' The plaintiff admitted the memorandum was in his handwriting but testified he did not know what it was all about; on cross-examination he was asked if the figures ''480'' which he had taken as a basis were not intended to stand for wages at $40 per month for twelve months. He denied that such was the fact but could give no rational explanation as to what his figures meant. His testimony throughout was halting and evasive even when his counsel asked him leading questions. The fact that the plaintiff admitted he had been convicted of a felony does not necessarily mean that he did not testify truthfully in this case, but section 10668, Revised Codes, permits proof of such conviction by way of impeachment of the testimony of one who has been so convicted. Certainly a conviction of one on a felonious charge does not add to his credibility as a witness and testimony given by one whose record is clear in that respect, in conflict with that of an exconvict, is entitled to the greater weight.

To the contrary, while Mrs. Peterson referred to her books frequently in testifying, her story was given in a frank manner, was clear and reasonable, and no doubt made the same

impression on the trial judge as it does upon me, the verdict to the contrary notwithstanding.

Opinions of this court in cases tried to the court without a jury frequently repeat the statement that the trial judge had the witnesses before him, saw their manner of testifying and was in better position than this court, reading the testimony from the record, to judge of the merit of such testimony and the truthfulness of the witnesses. Such being accepted conclusions there is no sound reason why the judgment of the trial court would not be just as sound in judging of the testimony in a jury trial as in one tried to the court without a jury. Such is the reason, as I view it, for the established rule mentioned above relative to this court's refusal to overturn the decision of the trial court in granting a new trial where, as here, the evidence is in sharp conflict.

The judgment should be affirmed.

Rehearing denied June 4, 1946.

On denial of Petition for Rehearing.

Mr. Justice Morris (dissenting).

I stand on my dissent to the original opinion and will add that a careful review of the two cases cited by the majority on the question of the weight of the evidence reveals no reasonable ground for citing them in this case. The prevailing party in neither case came into court with a character besmirched by a criminal record; no evidence in either case was discredited by other than testimony of witnesses, while here the claim of plaintiff that by his agreement he was to have more than $40 per month was in clear conflict with his own memoranda of his account and also in conflict with the defendant's books obviously written up before any controversy had arisen between them.

So long as the majority opinion remains a rule of this court, no trial judge may grant a new trial irrespective of the injustice done by a verdict.