BURNETT, ADMR., APPELLANT, *v.* NORTHERN PACIFIC RAILWAY CO., RESPONDENT.

(No. 8,275.)

(Submitted March 2, 1942. Decided April 10, 1942.)

[124 Pac. (2d) 307.]

254

*Mr. R. A. Burnett, Mr. Floyd O. Small* and *Mr. John W. Mahan,* for Appellant, submitted a brief; *Messrs. Small* and *Mahan* argued the cause orally.

*Mr. Fred L. Gibson,* and *Messrs. Coleman, Jameson & Lamey,* for Respondent, submitted a brief; *Mr. A. F. Lamey* argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

This action was commenced by Levi Nadeau as plaintiff to recover damages for personal injuries which he said he had sustained while working in the employ of the defendant Northern Pacific Railway Company, as a common laborer and in its freight yard of its station at Livingston, Montana. The case was tried and went to judgment for the defendant on motion for nonsuit. From this judgment the plaintiff appealed. After the appeal was perfected and before argument of the appeal, the plaintiff, appellant died. Proceedings were had whereby R. A. Burnett was appointed administrator of his estate. The administrator was substituted as the party in interest and the appeal now is prosecuted in the name of said Burnett as administrator of the estate of Levi Nadeau, deceased, as appellant. For convenience in discussing the case in this opinion the deceased, Levi Nadeau, will be referred to generally as the plaintiff.

The action was brought under the Federal Employers' Liability Act, 45 U. S. C. A., sections 51 et seq., the complaint alleg-

ing that the defendant company, an interstate carrier, had been guilty of negligence toward the plaintiff while he was in its. employ and engaged in work pertaining to its business as a common carrier in interstate commerce, and because of which he suffered personal injury. The general complaint is that the company had failed to furnish the plaintiff a safe place to work, and had failed to furnish proper equipment and appliances necessary for his safety in performing the work he was required to do. The prayer is for $20,000 damages.

The company, by its answer, denied any negligence on its. part, and alleged that the injury which plaintiff complained of resulted wholly from his own negligence, and also set up contributory negligence and assumption of risk as defense.

The accident which is the basis of the plaintiff's complaint occurred in the latter part of the livestock shipping season, on. December 7, 1936. The plaintiff had been employed by the company for five or six years, working on section crews, out on the line and in the yards, repairing track, scalping weeds and other general track and yard work. At this particular time he was working in a small crew in the yards at Livingston, cleaning up and keeping the tracks and cars in order for the handling of the company's traffic. Late in the afternoon of this day the foreman under whom he was working sent the plaintiff and another man to clean and condition some stock cars used for transportation of livestock and which were standing on a spur track in the yards. The work entailed cleaning out dirt accumulations on the floor of the cars, and sanding the cars, that is throwing in fresh sand on the floors of the cars. The sand used lay in piles along the track where the cars stood. This sanding track was over near the stock yards, a spur track that would hold about thirty-five stock cars. The sand was dumped along this track on the south side in piles about six or seven feet wide from the ties out.

In cleaning and sanding these particular cars the dirt was thrown out of the car door on the north side and deposited in piles along the north side of the track and the fresh sand was

shoveled in from the sand pile lying along the south side of the track, and through the door on the south side of the car. In entering the cars to clean them the men climbed up the brakeman's ladder at the end of the car and moved along the side of the car, finding foot-holds and hand-holds in cracks and ledges and entered the side door. After the dirt was cleaned out and thrown out the door on the north side, the men got out of the car from the door on the south side and got over onto the sand pile to throw in the sand. The plaintiff was injured in jumping from the car and onto the sand pile. The company at no time had provided step ladders or other convenience for getting in and out of the cars and no such convenience was provided in this instance. There was no foreman immediately present directing the men in doing this work. Plaintiff was experienced in this work. He said he had cleaned a great many cars that way, that during the fall shipping season they would clean sometimes as high as twenty-five to thirty-five cars a day.

The plaintiff and the other man with him, on this occasion, had cleaned and sanded two cars and cleaned a third, and the accident in which the plaintiff was injured occurred as he was getting out of the car through the side door and onto the sand pile on the south side of the track to shovel in sand. There had been a fall of snow the day before and the sand piles along the track were partly covered and the holes and depressions filled with snow. The plaintiff, in getting out of the car, sat on the edge of the floor in the car door, and placing his two hands on the edge of the car floor, one hand on either side of him, threw himself forward, using his hands and arms to spring himself forward, and thus jumped over onto the sand pile. He landed on his feet in a hole in the top of the sand pile, and his body fell backward resulting in the injury of which he complains. The man was fifty-nine years old and weighed two hundred pounds.

The sand pile extended out six or seven feet from the track. The ground sloped away from the track and the sand pile had been shoveled down so the top of the pile at this place was

about one foot lower than the edge of the ties. The ends of the railway ties were about even with the side of the car, and the car floor was about four feet above the railroad track. The track was clear of snow as was the ground near the track for about three and a half feet out.

The plaintiff says that the fall, when he landed in the hole in the top of the sand pile, resulted in injury to his back and other parts of the body of a permanent nature, from which he has ever since suffered and as a result of which he has been totally disabled and incapacitated from doing any work. He lays the blame of the accident on the company in that it had failed to provide proper equipment and convenience for safe exit from the car in which he was working, and in failing to give attention to the condition of the top of the sand pile and in failing to guard against danger of accident to the men in leaping from the car and onto the sand pile to shovel in the sand. The hole in which he landed with his feet was not noticeable because of the snow. The hole, he said, was about thirteen inches wide and about one foot deep. Of this condition of danger, he says, the company knew or should have known and of which it should have warned the plaintiff and taken other precautions against his possible injury therefrom.

The facts as above stated were brought out by the plaintiff's own testimony. The case was tried to a jury. At the close of the plaintiff's case defendant moved for a nonsuit, on the grounds that the plaintiff had failed to prove any negligence on the part of the defendant; that there was no evidence to show that any negligence of the defendant was the proximate cause of the plaintiff's alleged injuries; that the injuries, if any, suffered by the plaintiff were caused by his own negligence and failure to exercise ordinary care for his own safety; that the condition of danger, if any, was open and obvious and familiar to the plaintiff and was part of the risk the plaintiff assumed.

The motion for nonsuit was granted. Judgment was thereupon entered for the defendant, dismissing the action on the

grounds specified in the motion for nonsuit. From that judgment the plaintiff appealed.

We are unable to see in this case any negligence on the part ▮ of the company to which the injury complained of may be attributed. Nor can we see any risk of injury to which the plaintiff was exposed in doing the work in which he was engaged.

The two matters complained of were the company's failure to furnish him a ladder to get in and out of the stock cars, and the failure to have the pile of sand in condition so that he could in safety jump onto it from the stock car. The absence of these precautions neither of them, in our view, created any condition of danger that exposed the plaintiff to any risk of injury.

A step ladder may have been found useful and convenient, but it does not appear that the exit from the stock car might not be safely made without it. Plaintiff said he had never used a ladder and so far as he knew a ladder had never been used by any of the men doing this work. It was not an appliance expressly required by the Federal Employers' Liability Act to be furnished for the safety of employes. It does not appear that it had ever been considered as necessary. A descent of four or five feet from a position as here shown it seems could be made without risk of injury, especially by men working in and around freight cars in railroad yards. Apparently it had never been considered as presenting any condition of danger by the men employed in this work.

As to the condition of the sand pile along the track: That did not present any condition of danger from which the plaintiff would need to suffer injury. The sand pile was not part of the roadbed nor part of a walk. It was a sand pile placed there for use in sanding cars and from which sand was shoveled as needed. Of necessity the height and shape of the pile would constantly change by use and replenishment. The surface thereof was necessarily uneven from the use of the sand for which it was placed there. It was an ordinary condition, open and obvious and of which the plaintiff had full knowledge. There

was no need of injury resulting to the employe in getting onto it to shovel the sand.

So that we start out with no condition of danger in the sand pile itself nor any risk of injury in its ordinary use, that is, shoveling into the cars; and no condition of danger because of the elevation of the car floor from which the workmen were required to descend to the ground below without a step ladder. The danger arose from the way in which plaintiff made the descent. The whole question, therefore, is whether there was anything in the situation then confronting the plaintiff which made it necessary or excusable that he take the risk of injury in leaping from the car as he did.

The floor of the car, on the edge of which plaintiff sat as he got out, was between four and five feet above the track and the ground along the side, and there was a space of about three and a half feet extending out from the track that was comparatively level ground and not snow-covered. The plaintiff should have been able to alight from the car and onto the ground within that space with safety to himself and with no need of suffering injury. Plaintiff said he could have turned around and slid down or could have stepped out the other side onto the rubbish which had been shoveled out of the car. Instead of alighting a safe way, he leaped from the car and outward a distance of approximately five feet and onto the sand pile where it was rough, and he did not find good footing. The leap was made in such manner as to give him very little control in balancing his body, throwing himself forward with the strength of his arms and with his feet foremost. Unless he landed on good, firm footing, a fall was sure to result. He said that he landed with his feet in a hole which he could not see because of its being filled with snow. The leap which the plaintiff so made was careless, to say the least. It was wholly unnecessary. Any danger to him in making the leap was a condition brought about by himself, and any injury resulting to him therefrom, no one but himself was responsible for. (*Markinovich* v. *Northern Pac. Ry. Co.*, 55·Mont. 139, 174 Pac. 183.)

If an employee has choice of ways of doing a thing in the course of his employment, one fraught with danger and risk of injury to himself and another way that is safe or less dangerous, and he voluntarily chooses the unsafe or more dangerous way, his employer is not liable for injury resulting therefrom, if the risk of injury is obvious and such as a man of ordinary prudence would avoid. There are exceptions to this rule, as when the employe is in an emergency and without opportunity of deliberation, or if the hazard in the choice is not clear. But unless there are circumstances bringing the case within the exceptions, there can be no recovery. The rule has been stated as the law in a number of decisions of this court. In *Daniels* v. *Granite Bi-Metallic Consol. Min. Co.*, 56 Mont. 284, at page 289, 184 Pac. 836, at page 837, while there were circumstances which tended to excuse the action of the employe, the court says: "If, however, the evidence were undisputed that the position assumed by plaintiff to give the signal was more dangerous than another position which he might have assumed, and that, with full knowledge and appreciation of the facts and of the consequences likely to follow, he voluntarily assumed the more dangerous position, he would be guilty of negligence as a matter of law."

In *Mullery* v. *Great Northern Railway Co.*, 50 Mont. 408, at page 424, 148 Pac. 323, at page 328, the court, in speaking of the rule, said: "The question of his choice of ways is therefore presented by the place and manner of observation selected by him. Two places were possible: The one he did choose, and another from the plank walk between the tracks. If the former was obviously dangerous under the circumstances, and the latter less so, then his choice was fatal, unless justified by an emergency."

Appellant's counsel, in explanation of the manner in which plaintiff descended from the car, speaks of the plaintiff "having to jump from the car, down onto hard, frozen ground, and into a hole there which was filled and become concealed by snow"; that he was required "to hurry and work in great haste"

and "had no time to consider or make any investigation of the hazards or conditions that might exist at the point where he was required to clean the cars." There is nothing in the evidence to bear out this contention. There is nothing to show any necessity for making the longer leap in getting out of the car nor was there any evidence of needed or required haste which gave any reason or excuse for his carelessness and the risk of injury which he took in getting down as he did.

It seems to us that the injury which plaintiff complains of clearly resulted from the careless and dangerous way in which he got out of the car and which was wholly unnecessary; and that any element of negligence on the part of the employer is wholly absent from the case.

Not finding any negligent act or omission of duty by the company, there is no ground of liability under the common law rule for the injuries which the plaintiff sustained. (35 Am. Jur. 549, Master and Servant, sec. 121.)

Nor can there be any basis of liability under the Federal Employers' Liability Act where there is no negligence found other than that of the employe himself. The Federal Employers' Liability Act changes the common law rule as to contributory negligence, assumption of risk and negligence of fellow servant, but does not become operative in any case, unless there be violation of some safety provision of the statute, or unless negligence of some kind on the part of the employer or a co-employe was a factor in the occurrence of the accident. (35 Am. Jur.—Master and Servant, secs. 400, 402; *Seaboard Airline Ry.* v. *Horton*, 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1; *Jacobs* v. *Southern Ry. Co.*, 241 U. S. 229, 36 Sup. Ct. 588, 60 L. Ed. 970.)

There being no evidence to support a verdict for the plaintiff, the motion for nonsuit was properly granted.

The judgment is affirmed.

Mr. Chief Justicf Johnson and Associate Justices Angstman, Erickson and Morris concur.