MILASEVICH, Respondent v. FOX WESTERN MONTANA THEATRE CORPORATION, Appellant.

No. 8612

Submitted October 25, 1945. Decided January 15, 1946.

165 Pac. (2d) 195

Messrs. Meyer & Meyer, of Butte, for appellant.

Mr. H. L. Maury and Mr. A. G. Shone, both of Butte, for respondent.

MR. JUSTICE CHEADLE delivered the opinion of the court.

Action for damages for personal injuries resulting from having been bitten by a dog in the American Theatre, Butte, Montana, owned and operated by the defendant corporation. The case was tried before a jury, and resulted in judgment for plaintiff in the amount of $1,000.

Omitting the formal matter, the complaint alleges in substance that on or about September 7, 1942, the plaintiff, then a minor of eleven years, purchased an admission ticket to the theatre and was thereupon permitted to and did enter the theatre building, occupying a seat on the east aisle thereof about eight rows from the front, being the second seat off the aisle; that while plaintiff was so seated and watching a motion picture, the defendant carelessly and negligently allowed and permitted a dog to enter and run loose and unattended in the theatre, which dog bit plaintiff several times and in several places about the foot, ankle and calf of his right leg, thereby causing deep and severe

lacerations of the skin and flesh of his leg; that plaintiff employed a physician to treat said wounds; that within a short time after the injuries, infection set in causing the leg to become sore and swollen, causing plaintiff mental and physical suffering for a period of six months.

The complaint further alleges that the dog in question was not the property of the plaintiff, or under his control; that defendant had actual knowledge of the entrance and presence of said dog in the theatre, reasonably in time to have removed it or otherwise to have prevented the injury to plaintiff, and had the complete and exclusive control of and over said dog.

The defendant demurred generally to the complaint, and specially on the grounds that it is ambiguous, unintelligible and uncertain. The demurrer was overruled. Defendant's answer denies all of the material allegations of the complaint with reference to the injuries complained of.

At the conclusion of plaintiff's evidence defendant moved for a non-suit, and upon conclusion of all of the evidence, for a directed verdict in its favor. Both motions were denied.

Specifications of error relied upon by appellant are insufficiency of the evidence to justify the verdict, and that the court erred in the following particulars:

1. In overruling the demurrer.

2. In denying defendant's motion for a non-suit.

3. In denying defendant's motion for a directed verdict.

4. In rendering judgment against defendant.

5. In giving instructions numbered 7 and 8 over defendant's objections.

6. In overruling defendant's motion for a new trial.

That the verdict is contrary to instructions numbered 20, 21, 23 and 28.

Plaintiff testified that on the evening of September 7, 1942, he then being eleven years old, in company with one Bob Pavlovich, he purchased an admission ticket to the American theatre, entered the theatre and occupied the second seat in from the east, or right, aisle in about the eighth row from the front. While

he was watching a picture, he heard a woman scream in another part of the theatre, and about a minute later was bitten on the right ankle by a little black dog, whose presence he was unaware of before being bitten. He had never seen the dog before and did not know to whom it belonged. He described the injuries as two teeth marks or skin punctures on each side of the ankle, resulting in bleeding and subsequent infection. He left the theatre about fifteen minutes after being bitten, and walked home, assisted by Pavlovich, without reporting the incident to any employee of the theatre. His parents were unable to obtain medical attention that night, but the following morning plaintiff's father took him to a hospital, where Dr. Shields dressed the wounds, and continued such treatment twice weekly for about eight weeks. He missed one-half day of school, and during the first week suffered some pain which somewhat interfered with his sleep. No permanent injury resulted.

The witness Pavlovich corroborated plaintiff's testimony of the circumstances surrounding the incident in the theatre. He testified that he and plaintiff remained in the theatre until the end of the second feature picture, about fifteen minutes after plaintiff was bitten.

Plaintiff's parents testified as to his condition and actions after his return from the theatre, and as to treatment of his wounds. The father testified that on the day following the incident, he advised the manager of the theatre that plaintiff had been bitten, and was told by the manager to take the boy to a doctor.

Dr. Shields testified as to the wounds and treatment administered, consisting of cleansing and dressing the wounds twenty-three or twenty-four times, at a reasonable charge of $50.

By deposition taken in behalf of defendant and read to the jury, Foster Porter testified that he was employed as doorman at the American theatre on September 7, 1942; that at about 8:30 p. m. on that day he saw a dog trying to enter the main door of the theatre and chased him out three times; that, ''while some customers were entering the theatre the dog ran in along-

side them. I saw the dog in the lobby and started pursuing it. The dog ran down the left aisle, facing the screen. The usherette attempted to stop the dog. I immediately went down the aisle after the dog and caught it. I took the dog to the lobby and he broke away from me. He then ran down the right aisle. John Schwartz, a theatre employee, immediately took after the dog. A customer leaving the theatre met the dog in the aisle and he and John caught it. The customer and Schwartz then ejected the dog from the theatre. We were after the dog every minute it was in the theatre." He further stated that after the dog had been ejected usherettes went down each aisle asking everyone on the aisles and on the first row whether they had been bitten, or had seen anyone bitten, by the dog, and received no affirmative answers. On cross-examination he stated that the dog entered the theatre only once.

The testimony of John Schwartz, taken at a former trial of this action, as a witness for the defendant, was read by plaintiff. On the date of the incident complained of he was manager of the Fox theatre in Butte, which was also owned by the defendant corporation. With reference to the biting incident, he testified: "As I was going in the American theatre there was a black cocker spaniel standing in the doorway and the ushers and Foster Porter were trying to coax him out, and I went into the theatre and the dog came in too. They weren't able to keep him out. They had both doors open as it was kind of warm out, so I decided to help them to try to get the dog out, so I started petting him to coax him out nice, and when I reached down he bit me on the hand, and I pulled it up and he finally left; and I still have a scar on my hand from it. And then we tried to get him out and Betty Holdorf hit the dog over the head with the flashlight, but before she hit him over the head he ran down the right aisle, so we took after him and got him out. He was probably down the aisle about a minute or so, and a patron helped Foster and I grabbed the dog, and he got away, and Foster and the patron booted him the rest of the way out, and they got him out and he disappeared * * *." He also stated that

not more than three minutes elapsed from the time he reached the theatre until the dog was ejected.

Betty Holdorf Kissock, a witness for defendant, testified that she was working as an usher in the American theatre on the evening in question; that she was in the rest room when notified that there was a dog in the theatre, whereupon she proceeded to the right aisle, where she saw a small dog running in and out of the aisle; that she and other employees tried to put him out; that while trying to get him out the dog made a lunge at her and tore her trousers leg, whereupon she threw a flashlight at him, stunning him with a blow on the head; that immediately thereafter a patron and Foster took the dog out of the theatre. She also stated that not more than two or three minutes elapsed from the time she proceeded to the right aisle until the dog was finally ejected, during all of which time she and other employees were attempting to eject the dog from the building.

The evidence established that one of the theatre rules is that dogs should not be allowed in the theatre, and that the dog in question was not the property of the theatre or any of the employees thereof.

We shall first consider error predicated upon the trial court's denial of defendant's motion for a directed verdict in its favor, made at the conclusion of all of the evidence.

In this state it is well established that the law imposes upon the operator of a theatre the duty of using ordinary care to have the premises reasonably safe, and to warn patrons of any hidden or lurking danger therein. Leybold v. Fox Butte Theater Corp., 103 Mont. 232, 62 Pac. (2d) 223; McCartan v. Park Butte Theatre Co., 103 Mont. 342, 62 Pac. (2d) 338; Bennetts v. Silver Bow Amusement Co., 65 Mont. 340, 211 Pac. 336. The rule is thus stated in 52 Am. Jur., sec. 47, p. 291: "It is the general rule, of almost universal acceptance, that an owner or proprietor of a theatre or public amusement is bound to exercise a degree of ordinary and reasonable care for the safety and protection of his patrons—the degree of care that would be exercised by an ordinarily careful and prudent man

in the same position and circumstances." Such owner or proprietor is not an insurer of the safety of his patrons. 52 Am. Jur. 292, and cases cited. And this rule extends to the duty to use reasonable care to keep the premises safe for customers from injury by animals. In Andrews v. Jordan Marsh Co., 283 Mass. 158, 186 N. E. 71, 72, 92 A. L. R. 726, which involves facts somewhat similar to those here involved, it is said: "The plaintiff can recover only upon proof of breach of the defendant's duty to keep the premises in safe condition for her use as a customer. [Citing cases.] Reasonable care to keep the premises safe for customers from harm caused by animals is within the scope of this duty. [Citing cases.] The action is grounded upon negligence, but there is no negligence unless the plaintiff's injury, though in its precise form unforseeable, was in its general nature a probable consequence of some act or omission for which the defendant was responsible." In the case cited, the plaintiff's injuries resulted from being bitten by a dog at large in the store building of the defendant; the dog was not owned by defendant, and no effort was made by the owner or employees to eject it from the building. The court further said: "It could not have been found that the plaintiff's injury was the result of any act or omission for which the defendant was responsible, apart from its omission to exclude the dog from the store or, in lieu thereof, to restrain it so that it would not injure a customer. The defendant did not incite the dog to injure the plaintiff * * * or so control its actions that such injury resulted. * * * It was, therefore, essential to the plaintiff's case to prove that harm to some person standing in the same general relation to the defendant as the plaintiff of the same general character as that which came to the plaintiff was a probable consequence of the presence of the dog in the store under the circumstances shown."

This action is based upon negligence of the defendant, the allegations of the complaint in that regard being that "the defendant carelessly and negligently allowed and permitted a dog * * * to enter and run loose and unattended in said theater building * * *; that the dog so carelessly and negligently allowed

and permitted to enter the said theater, did bite this plaintiff'';
and that ''defendant had actual knowledge of the entrance and
presence of said dog in its theater reasonably in time to have
removed it, or otherwise to have prevented the injury to
plaintiff.''

Here, as in all such cases, the plaintiff must prove actionable
██ negligence. In defining this term, this court said in Brown
v. Columbia Amusement Co., 91 Mont. 174, 6 Pac. (2d) 874,
877: ''Actionable negligence, the converse of reasonable vigi-
lance, is the failure to do what a reasonably prudent person
would ordinarily do under the circumstances, or the doing of
what such a person would not have done under the circum-
stances. [Citing cases.] * * * The test of actionable negligence
is not what might have prevented a particular accident, but
what reasonably prudent men would have done in the discharge
of their duties under the circumstances as they existed at the
time of the accident.''

Without declaring the existence of such a duty, we think that
██ under the pleadings and proof of this case, negligence of
the defendant must be predicated upon its failure, either to
restrain the dog from entering the theatre, or failure to eject
it once it had entered. The evidence shows that every reasonable
effort was made by defendant's employees, both to keep the dog
from entering the theatre, and to promptly eject it after it had
entered; that from the time the dog entered the theatre they
were continuously engaged in an attempt to eject it. Nothing
further was required in defendant's fulfillment of its duty to
plaintiff and its other customers. As we view it, no actionable
negligence on defendant's part was shown, unless it be held
that defendant is an insurer of the safety of its customers, and
such is not the law.

Viewed in the light most favorable to plaintiff, we hold that,
██ under the rules above enumerated, the evidence wholly
fails to establish negligence on the part of the defendant as
alleged. It follows that the trial court erred in its refusal to
grant defendant's motion for a directed verdict in its favor.

In view of the decision reached it is unnecessary to rule upon other specified errors. Since the case has been twice tried upon substantially the same evidence no reason appears for directing a new trial.

The judgment is reversed, and the cause remanded with directions to dismiss the action.

Mr. Chief Justice Johnson and Associate Justices Morris, Adair and Angstman concur.