WILLIAM RAY TAYLOR, Plaintiff and Respondent, v. CHICAGO, MILWAUKEE, ST. PAUL and PACIFIC RAILROAD COMPANY, Defendant and Appellant.

No. 10546

Submitted June 12, 1963. Decided August 8, 1963.

Rehearing denied September 9, 1963.

384 P.2d 759

Garlington, Lohn & Robinson, Missoula, J. C. Garlington, Missoula (argued orally), for appellant.

Dillavou & Hauf, Billings, John A. Hauf, Billings (argued orally), Gordon Hickman, Harlowton, for respondent.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This is an appeal by defendant Railroad Company from a judgment for plaintiff entered in the district court of Wheatland County, following a jury trial.

The facts of this case are relatively simple. Plaintiff, a portly 51 year old man, was a professional cook. He had considerable experience in cooking for railroad extra gangs. He had been employed for various jobs by the Olympic Commissary Company since 1956. This Company had for many years operated under a contract with the defendant railroad Company, whereby the Commissary Company would furnish bedding sup-

plies, food service by a full-time cook, and a small commissary for the workmen. Defendant owned the railroad cars in which the above services were to be performed and made the same available to the Commissary Company for outfitting.

It was customary that the foreman of the extra gang could and often did request a replacement for a cook that he considered unsuitable. In such event, the Olympic Commissary Company would then send another employee. In July of 1958, plaintiff came to Montana from Seattle, Washington, as such a replacement. The defendant at that time was repairing its road in central Montana. The first job-site at which the plaintiff worked was Ryegate, Montana. Upon his arrival there, plaintiff set about to perform his duties which included preparing meals, ordering supplies from the Commissary Company, operating the Commissary, keeping records of meals served which were sent to the Seattle office of the Commissary Company, and starting the generator which provided electric lights for the work train.

In Ryegate, the train was located about a half mile from the depot. Hence, a portable toilet was set up nearby. Also, portable steps which leaned against the cars were in place to facilitate easy access to them. After a couple of weeks the train moved to a new location, the railroad yards at Shawmut, Montana. Since the train was located directly across from the depot which had a toilet, the portable toilet was not used. Plaintiff testified that he requested the portable toilet to be used but it was not set up prior to his accident.

Between the depot and the work train was the "mainline" track and the "passing" track. Therefore, for obvious safety reasons, the portable steps were used only on the side of the cars away from these tracks. The record shows that plaintiff tried to erect the steps on the track side, but was told this could not be done. Thus, to descend from the cars via the track-side doors it was necessary to use the existing step. This step was suspended under the door and there was also a vertical handle

or "grab iron". To negotiate the step, a person had to grip the handle, swing his body around and then feel for the step below with one foot. There was no lighting arrangement for such doorways. While plaintiff apparently was able to manage this satisfactorily, two days before his accident he testified that he slipped on the step and had told the railroad officials.

The alternative to using this step was to exit on the other side (which had the portable steps) walk around the train and then back to the depot. Those in the cars, then, had a choice of routes, though the permanent step on the track-side was the fastest and most convenient.

On August 31, 1958, the Labor Day week-end when other workmen were not present, plaintiff testified he arose early in the morning just as dawn was breaking. He intended to visit the toilet, and then turn the lights on so he could work on his records. It was after 4:00 a.m. and there was enough light so the plaintiff could discern the depot. In attempting to exit from the commissary car, he swung himself around and somehow lost his footing or grip, or both, and fell. As a result of the fall, plaintiff suffered a dislocated right hip and other injuries.

Plaintiff's complaint filed on August 31, 1960, alleged that he was "employed and controlled by defendant" and that the cause of action was based on the Federal Employers' Liability Act, the Federal Safety Appliance Act and the laws of the State of Montana. The complaint further alleged that "the careless and negligent acts or omissions of the said defendant, its agents, servants or employees, among other things, did consist of the following:

"(a) Failure to provide plaintiff with a safe place to work.

"(b) Failure to provide toilet facilities in a place and at a location where it could be reached without endangering the plaintiff with the hazardous crossing of railroad tracks in darkness.

"(c) Failure to provide any kind of lighting to illuminate the doorway of the commissary car and surrounding area.

"(d) Failure to provide safe steps or ladder to enable a safe departure from the commissary car and failure to provide secure handholds.

"(e) Supplying a defective step and handholds.

"(f) Failure to discover the injured plaintiff and render aid, and allowing the injured plaintiff to lay suffering upon the railroad tracks for a period of more than six hours which contributed to the plaintiff's injuries.

"(g) Failure to discover by inspection the defective equipment, and the insufficiency of safe equipment."

The jury specifically found that the plaintiff was not an employee of the defendant; that defendant was guilty of negligence which caused the injury to the plaintiff as an invitee on railroad premises; that plaintiff was not guilty of contributory negligence; and that plaintiff did not assume the risk of injury.

Defendant specifies as error the fact that the district court denied defendant's motion for directed verdict at the close of all the evidence, and that the court erred in refusing to give the following instruction:

"You are instructed that there is no evidence in this case that the defendant was guilty of any negligence toward the plaintiff as an invitee on the railroad premises, and you may not award the plaintiff any damages as an invitee."

Plaintiff objected to the above offered instruction on the ground that he was, in fact, an invitee and perhaps a business invitee, if he was not an employee.

Defendant further specified the court's entering of judgment for the plaintiff on the verdict as error, and contends that defendant's motion to set aside the judgment should have been sustained.

The defendant asserts that no negligence was ever proved in that the car and step was reasonably safe and that the plain-

tiff was entirely familiar with it and constantly made use of it; that the condition of the step for ingress and egress from the car was openly visible and obvious, there was no hidden or lurking danger; that the plaintiff himself was in charge of the light plant and operated it as a part of his duties for his employer; that he had opportunity to furnish his own light if he deemed light necessary; that he had a choice of routes to the depot toilet available to him, either at the car door using the step or out another door with portable steps so as to reach the ground; that while plaintiff testified he complained to railroad employees, none were named by him and no employee recalls any complaint or complaints having been made.

Plaintiff contends that the railroad owed him the duty to use ordinary care to see that the premises were kept safe and that in this case that the step would not meet the I.C.C. requirements, and further that the strict rule with regard to foreseeability of danger is never relaxed for one charged with such a duty, particularly a carrier; that the duty of the carrier is not the same as that of a land-owner; that there was hidden and lurking danger because no lighting of any kind was provided at the step or outside the railroad car on the railroad premises; and finally that the defendant had knowledge of these conditions from information supplied by the plaintiff and that they failed in their duty to the plaintiff.

It is quite clear from the record here that the plaintiff slipped and fell. His various descriptions of how the accident occurred are confusing but this much appears: He described no faulty condition of the car or step that caused him to fall. His complaint is that the portable toilet was not available to him and that he either had to go down the portable steps and walk around the string of cars or go down the step and across the tracks to reach the depot facility.

So far as the step is concerned no witness in this case testified as to any difficulty in getting in or out of the car by its use, even the plaintiff had used it by his own admission

over 100 times with no difficulty. There is no testimony of any defect in its construction. Plaintiff would have us believe that because the step is not of the same length as that provided by I.C.C. regulations for a side door caboose that they must be unsafe in some manner. However, the only difference appears to be in the length of the step in that on a side door caboose the step must be a minimum of five feet in length, minimum width of six inches. On this car the step is forty-one inches in length and eight inches wide. The additional length required for a side door caboose was explained as being necessary because members of the train crew get on and off while the car is in motion, whereas that is not true on the car in question.

In Lencioni v. Long, 139 Mont. 135, 361 P.2d 455, this court stated:

"It has been well-said that a defendant who could not foresee any danger of direct injury resulting from his conduct, or any risk from an intervening force is not negligent. Siterak v. Montgomery, 32 Wash.2d 794, 203 P.2d 1062.

"The United States Supreme Court in Atchison, Topeka & Santa Fe Ry. v. Calhoun, 213 U.S. 1, 9, 29 S.Ct. 321, 323, 53 L.Ed. 671, quoting from Pollock on Torts (8th ed.), 41, said: '* * * if men went about to guard themselves against every risk to themselves or others which might, by ingenious conjecture, be conceived as possible, human affairs could not be carried on at all. The reasonable man, then, to whose ideal behavior we are to look as the standard of duty, will neither neglect what he can forecast as probable, nor waste his anxiety on events that are barely possible. He will order his precaution by the measure of what appears likely in the known course of things.'"

In Myles v. Helena Motors, 113 Mont. 92, 96, 97, 121 P.2d 548, 550, this court observed:

"It is our view that on the evidence in the case plaintiff has failed to show any negligence on the part of the defendant, and that, if the cause had been submitted to the jury and a

verdict returned in plaintiff's favor, it would have been the duty of the court to set it aside. The hoist in question was in plain view. It was daylight and the place was well lighted. It was not what may be denominated a hidden defect in any sense. The fact that plaintiff was obliged to watch where he stepped to avoid stepping in oil was no reason why he could not also observe the hoist which stood directly in his path and which stood at an elevation of about fifty-eight inches. He himself was sixty-eight inches tall. This case is the same as the case of Losie v. Frisk, 243 App. Div. 825, 278 N.Y.S. 25, where, under facts practically identical with these, the court held that the nonsuit was properly granted. While, as owner of the garage, the defendant was under obligation to warn the plaintiff of any hidden dangers on the premises (Mellon v. Kelly, 99 Mont. 10, 41 P.2d 49), we fail to see where it owed any duty to warn the plaintiff of the presence of the hoist which was as open and obvious to him as to the defendant.

"The standard of care required of defendant under the law was that which a reasonably prudent and careful person would have exercised under the same or similar circumstances. When the evidence is such that reasonable minds might reach different conclusions as to whether that test is met, the question becomes one for the jury. But where, as here, reasonable minds could arrive at but one conclusion, and that conclusion being that defendant did not fail in the exercise of reasonable care, the question was properly withdrawn from the jury."

In Burnett v. Northern Pacific Ry., 113 Mont. 253, 260, 124 P.2d 307, 310, this court stated:

"If an employe has choice of ways of doing a thing in the course of his employment, one fraught with danger and risk of injury to himself and another way that is safe or less dangerous, and he voluntarily chooses the unsafe or more dangerous way, his employer is not liable for injury resulting therefrom, if the risk of injury is obvious and such as a man of ordinary prudence would avoid. There are exceptions to this rule,

as when the employe is in an emergency and without opportunity of deliberation, or if the hazard in the choice is not clear. But unless there are circumstances bringing the case within the exceptions, there can be no recovery. The rule has been stated as the law in a number of decisions of this court. In Daniels v. Granite Bi-Metallic Consol. Min. Co., 56 Mont. 284, at page 289, 184 P. 836, at page 837, while there were circumstances which tended to excuse the action of the employe, the court says: 'If, however, the evidence were undisputed that the position assumed by plaintiff to give the signal was more dangerous than another position which he might have assumed, and that, with full knowledge and appreciation of the facts and of the consequences likely to follow, he voluntarily assumed the more dangerous position, he would be guilty of negligence as a matter of law.'

"In Mullery v. Great Northern Railway Co., 50 Mont. 408, at page 424, 148 P. 323, at page 328, the court, in speaking of the rule, says: 'The question of his choice of ways is therefore presented by the place and manner of observation selected by him. Two places were possible: The one he did choose, and another from the plank walk between the tracks. If the former was obviously dangerous under the circumstances, and the latter less so, then his choice was fatal, unless justified by an emergency.'

"Appellant's counsel, in explanation of the manner in which plaintiff descended from the car, speaks of the plaintiff 'having to jump from the car, down onto hard frozen ground, and into a hole there which was filled and become concealed by snow'; that he was required 'to hurry and work in great haste' and 'had no time to consider or make any investigation of the hazards or conditions that might exist at the point where he was required to clean the cars.' There is nothing in the evidence to bear out this contention. There is nothing to show any necessity for making the longer leap in getting out of the car nor was there any evidence of needed or required haste

which gave any reason or excuse for his carelessness and the risk of injury which he took in getting down as he did.

"It seems to us that the injury which plaintiff complains of clearly resulted from the careless and dangerous way in which he got out of the car and which was wholly unnecessary; and that any element of negligence on the part of the employer is wholly absent from the case.

"Not finding any negligent act or omission of duty by the company, there is no ground of liability under the common law rule for the injuries which the plaintiff sustained. 35 Am.Jur. 549, Master and Servant, § 121.

"Nor can there be any basis of liability under the Federal Employers' Liability Act where there is no negligence found other than that of the employe himself. The Federal Employers' Liability Act changes the common law rule as to contributory negligence, assumption of risk and negligence of fellow servant, but does not become operative in any case, unless there be violation of some safety provision of the statute, or unless negligence of some kind on the part of the employer or a co-employe was a factor in the occurrence of the accident. 35 Am. Jur.—Master and Servant, §§ 400, 402; Seaboard Airline Ry. v. Horton, 233 U.S. 492, 34 S.Ct. 635, 58 L.Ed. 1062, L.R.A. 1915C, 1; Jacobs v. Southern Ry. Co., 241 U.S. 229, 36 S.Ct. 588, 60 L.Ed. 970.

"There being no evidence to support a verdict for the plaintiff, the motion for non-suit was properly granted."

In Cassaday v. City of Billings, 135 Mont. 390, 340 P.2d 509, it is said:

"Actionable negligence arises only from a breach of a legal duty. Jonosky v. Northern Pacific Ry., 57 Mont. 63, 72, 187 P. 1014.

"It is well-established in Montana that a landowner is obligated toward an invitee to either use ordinary care to have the premises reasonably safe, or to warn the invitee 'of any hidden or lurking danger therein'. Milasevich v. Fox Western Mon-

tana Theatre Corp., 118 Mont. 265, 270, 165 P.2d 195, 197, and see Restatement, Torts, Negligence, § 343. He is not an insurer against all accidents and injuries to such persons while there. Milasevich v. Fox Western Montana Theatre Corp., supra.

"There was no hidden or lurking danger under the circumstances herein requiring a warning. The plaintiff saw and tested the ice. The condition was open, visible and obvious. In the face of this knowledge, beside skating, she saw fit to carry a four year old child suspended between herself and her husband. We fail to see where the respondent breached any legal duty owed the plaintiff. On this ground alone, the district court was correct in granting the non-suit."

While plaintiff contends none of these cases establish rules of law applicable here he admits that every case must stand or fall on its own merits. Plaintiff relies on Ahlquist v. Mulvaney Realty Co., 116 Mont. 6, 19, 152 P.2d 137, 143. In that case this court found there was a conflict of the evidence to be resolved by the jury and stated so in these words:

"Where, as herein, there is a conflict in the evidence as to whether the facilities were in an unsafe condition, either from structural defects or negligent maintenance, which proximately caused the injuries complained of, or whether plaintiff is, herself, guilty of contributory negligence constituting a proximate cause of said injuries, the conflict is one to be decided by the jury."

Other cases cited by plaintiff are to the same effect. We have no disagreement with this rule of law, the only question is its applicability here. As heretofore discussed there is no proof of any defect in the construction of the step, it was openly visible, no hidden or lurking danger present, and plaintiff had used it safely on many occasions and was fully familiar with its use. He had a choice of routes to the depot toilet, one easier to negotiate but requiring a longer walk than the other, but neither in any sense of the word dangerous to anyone fa-

miliar with their use as was the plaintiff. As to the lighting, plaintiff himself testified he could discern the depot, if he needed a flashlight he could have obtained one, if the lights in the cars would have been necessary he could have started the light plant, in other words defendant did nothing to hinder plaintiff from using whatever light he wished if he deemed any necessary. Plaintiff admitted also that he could have waited until it was a little lighter if he had chosen to do so. Again he testified that the bottom of his shoes were real slick at the time he slipped.

It is our view that there are no issues of fact to be determined by the jury; there exists no conflict in any of the essential facts and thus it was a question of law whether the defendant was liable for the plaintiff's injuries. In view of the testimony and the law it is our opinion that the trial court should have granted defendant's motion for a directed verdict.

The judgment is reversed.

MR. JUSTICES CASTLES, JOHN CONWAY HARRISON and DOYLE, concur.

MR. JUSTICE ADAIR, dissenting:

In my opinion the trial court properly denied the defendant Railroad's motion for a directed verdict in defendant's favor and that following and pursuant to the jury's verdict the trial court properly and, in conformity with such verdict entered judgment for the plaintiff William Ray Taylor. I think the judgment so entered in the trial court should be affirmed. Accordingly I dissent to the above majority opinion.