RICHARD VOGEL, Plaintiff and Respondent, v. FETTER LIVESTOCK COMPANY, a Corporation, Defendant and Appellant.

No. 10658

Submitted April 6, 1964. Decided August 11, 1964.
Rehearing Denied September 1, 1964.

394 P.2d 766

Wiggenhorn, Hutton, Schiltz & Sheehy, and Joseph P. Hennessey, John C. Sheehy (argued), Billings, for appellant.

Poore, Poore & McKenzie and Urban Roth, Butte, Vogel, Ulmer & Bair, Robert Vogel (argued), Mandan, N. D., for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment entered after a jury returned a verdict against the defendant in the sum of $80,000.

The action was one for damages to plaintiff resulting from injuries suffered on or about August 10, 1960, while helping to fight a fire in a building on premises owned by Fetter Livestock Company, defendant.

The action was originally filed on March 9, 1962. Defendant's motion for dismissal was overruled by the trial court. The action was tried before a jury which returned a verdict for plaintiff. Defendant's motion for a new trial was denied. This appeal followed.

Defendant, appellant here, is a family farm corporation, operating a farm and ranch business near Harlowton, Montana. Richard Vogel, plaintiff, respondent here, was injured on the farm premises on August 10, 1960, when a burning barn exploded, casting burning debris upon plaintiff and Wallace Fetter, president of the farm corporation.

Prior to the time of the accident, 5:00 p.m. in the evening, plaintiff, Richard Vogel, who was employed as a railroad engineer and was engaged in part-time ranching also, had come to Montana from North Dakota, where he was a resident, for the purpose of looking for a ranch or farm that he might be interested in purchasing. Plaintiff arrived at the Fetter ranch on August 10, 1960, with his wife and a real estate agent. Plaintiff then left the ranch home and went to the scene of a hay-stacking operation, about one mile away from the ranch home so that he could talk to his aunt, Hilda Fetter Morris, also the mother of Wallace Fetter, about the places that he had seen that day and also the ones that he should look at yet.

Upon arriving at the place where the hay was being stacked, plaintiff climbed upon the haystack and helped the others in completing the work and also discussed with his aunt the places he had seen. Plaintiff was there from one-half to one hour when smoke was seen rising from the location of the ranch

buildings. Several of the people there, including plaintiff and Wallace Fetter, went to the scene of the fire.

When they arrived, a barn was burning. Immediately, Wallace Fetter inquired of persons standing nearby whether the "dynamite" had been removed. He was informed that it had. Testimony at the trial showed that, in fact, "dynamite" had been removed, but there was a conflict as to whether it was "ditching dynamite" or "black powder" sticks. Just before the fire started there were four kinds of explosives in the barn: ditching dynamite, black powder sticks, dynamite caps, and garden fertilizer. Wallace Fetter knew of the presence in the barn of these materials but there is some dispute as to whether he knew of the explosive character of the fertilizer when subjected to a high temperature and burning within a confined space. Plaintiff had no knowledge of what was in the burning building.

After inquiring about the dynamite Wallace Fetter attempted to start a gasoline pumping unit in order to pump water on the fire. Plaintiff assisted Fetter. In trying to connect the hose to a pipe on the motor, Fetter discovered that they were not the same size. Thereupon, Fetter took off his shirt and threw it to plaintiff asking him to stuff the shirt around the pipe and hose junction in order to seal the escape of water. While plaintiff was in the act of stuffing the shirt around and into the pipe a violent explosion occurred. The explosion threw the barn completely into the air and scattered burning debris in a wide area. The north wall fell upon plaintiff and Fetter, trapping them under the burning wall.

Both plaintiff and Fetter were seriously burned in the accident and were hospitalized. Plaintiff could not work for over a year because of his injuries, but after one year he did return to work for the Northern Pacific Railway Company as an engineer. Three doctors testified as to his permanent disability. One said in examining plaintiff just before he went back to work, that he did not find any limitation of motion or other

disabilities to prevent plaintiff from pursuing his occupation as an engineer. The other two doctors testified that plaintiff was going to suffer from a permanent disability of 30 - 40 percent.

Defendant, appellant, specifies as error the following:

(1)   The instructions given to the jury were in error, confusing and misleading:

(a)   with respect to proximate cause;

(b)   with respect to the status of plaintiff as an invitee; and

(c)   with respect to the duty of defendant to warn plaintiff of danger.

(2)   The damages of $80,000 were excessive, and the result of passion or prejudice upon the following grounds:

(a)   the "per diem" argument to the jury by plaintiff's counsel was improper and not based upon the evidence in the case; and

(b)   the award of $80,000 was excessive under the evidence, and the result of passion and prejudice.

Defendant contends that the instructions with respect to proximate cause given to the jury were in error, confusing and misleading; that a hopeless and irreconcilable conflict exists in the instructions as to the circumstances under which plaintiff was entitled to have a verdict. The instructions in dispute are:

No. 6.   "If in these instructions any rule, direction or idea has been stated in varying ways, no emphasis thereon is intended by me, and none must be inferred by you. For that reason, you are not to single out any certain sentence or any individual point or instruction, and ignore the others, but you are to consider all the instructions as a whole, and to regard each in the light of all others.

"The order in which the instructions are given has no significance as to their relative importance."

No. 9.   "The burden is upon the plaintiff to prove by a preponderance of the evidence that the defendant was negligent

and that such negligence was a proximate cause of injury to the plaintiff."

No. 13. "You are instructed that the proximate cause of an injury is that which, in a natural and continuous sequence, unbroken by any new cause, produces the injury, and without which the injury would not have occurred."

No. 19. "You are instructed that the plaintiff does not have to prove the allegations of his complaint that are admitted in the answer. Also it is not necessary for the plaintiff to prove all of the acts of negligence alleged in his complaint in order to entitle him to recover, it only being necessary that he establish by a preponderance of the evidence any one or more of the acts of negligence charged in the complaint and that such act or acts proximately caused the injuries complained of."

No. 20. "You are instructed that you may not find the defendant negligent in the keeping, storing or use of dynamite or other explosives in this case, unless you find that the defendant did not use that degree of care which would be used by ordinarily prudent persons in the same or similar circumstances in the keeping, storing or use of such dynamite or other explosives."

No. 21. "On the other hand, you are instructed that you may find for the plaintiff if you find that the defendant was negligent in the keeping, storing or use of dynamite or other explosives in this case, and if you find that the defendant did not use that degree of care which would be used by an ordinarily prudent person in the same or similar circumstances in the keeping, storing, or use of such dynamite or other explosives."

No. 23. "You are instructed that if, under the evidence and the instructions of the Court, your verdict is in favor of the plaintiff and against the defendant, the measure of damages in this case is the amount of money that will reasonably compensate the plaintiff for all loss or injury you find he suffered in person caused by him by reason of the accident, and it will be your duty to assess and write into the verdict the

amount of damages which the plaintiff has sustained by reason of the acts set forth in the complaint insofar as they are proven. In determining the amount of damages, you should consider, allow for and make compensation for the injuries you find were suffered by the plaintiff, for all pain and suffering, fears, anxiety, mental and emotional distress, if any, caused by the injuries whether the same be present or past or will endure in the future. You should compensate for all loss of earnings, if any, that you find the plaintiff sustained by reason of his injuries. You should compensate for all impairment of his earning capacity, if you find such, whether such impairment, if any there is, is past at the time of the trial, or is present, or whether it will necessarily remain in the future. You should further consider and allow for and make compensation to the plaintiff for all moneys that he has actually expended or has obligated himself to pay as a result of his said injuries and that were reasonably necessary to be incurred in the treatment thereof, such as physicians, surgeons, hospitals, nurses and medicines, and any additional expense that will be incurred in the future, if you find that such will be incurred, in the payment of physicians, surgeons, hospitals, nurses and medicines in the further treatment of his said injuries and reasonably and necessarily to be incurred therefor. The amount sued for in the complaint as amended should not be to you any criterion of the amount of your verdict if for the plaintiff, but in no event must your verdict be for more than $220,000.00, the amount sued for in the complaint, as amended."

No. 24. "If, adhering to the Court's instructions, you find that plaintiff is entitled to a verdict against the defendant, it will then be your duty to award the plaintiff such amount of damages as will compensate him reasonably for all the detriment suffered by him *and of which the defendant's negligence, as found by you, is a proximate cause.* Instruction as to damages are given to be applied only in case you find the plaintiff is entitled to a verdict on the evidence. They have no applica-

tion where, upon consideration of the whole case, the liability of the defendant has not been established, nor should such instructions be understood by the jury as conveying any intimation that in the opinion of the Court the plaintiff is or is not entitled to damages. That is the sole province of the jury. Instructions as to the measure of damages are intended for your guidance in the event you find from the evidence in favor of the plaintiff."

Defendant has cited several cases for the proposition that when conflicting instructions are given upon a material point, it is reversible error. (Palmer v. McMaster, 10 Mont. 390, 25 P. 1056; Sullivan v. Metropolitan Life Ins. Co., 35 Mont. 1, 88 P. 401; Wells v. Waddell, 59 Mont. 436, 196 P. 1000; Skelton v. Great Northern Ry., 110 Mont. 257, 100 P.2d 929; Richland County v. Anderson, 129 Mont. 559, 291 P.2d 267. Defendant urges that Instruction No. 21 conflicts with the other instructions because by reading Instruction No. 21, which contains no language about proximate cause, with the first paragraph of Instruction No. 23, which recites, "You are instructed, that if, *under the evidence and the instructions of the court,* your verdict is in favor of the plaintiff and against the defendant, the measure of damages in this case is the amount of money that will reasonably compensate the plaintiff for all loss or injury you find he suffered in person" the jury could find for plaintiff without any regard as to whether the injuries were proximately caused by any act or acts of negligence proven. We cannot agree with defendant. Instruction No. 9 states that the burden is on plaintiff to prove defendant negligent and that such negligence was the proximate cause of the injury to plaintiff. Instruction No. 13 defines proximate cause. Instruction No. 19 requires plaintiff to prove one or more of the acts of negligence alleged in the complaint "and that such act or acts proximately caused the injuries complained of." Instruction No. 24 tells the jury that, if they find plaintiff is entitled to a verdict, it is their duty to award such damages as will com-

pensate him for the detriment suffered by him "and of which the defendant's negligence, as found by you, is a proximate cause." Thus, other instructions dealt with proximate cause and Instruction No. 21 certainly did not specifically exclude proximate cause.

This is not a case where one of two instructions were actually erroneous or where the two were in irreconcilable conflict, but rather, it is a case where one of the instructions was incomplete. Instruction No. 21, the incomplete instruction, may be explained or made complete by the other instructions. (Skelton v. Great Northern Ry Co., 110 Mont. 257, 261, 100 P.2d 929, 931.) In the instant case the trial court instructed the jury in Instruction No. 6 to take the instructions as a whole. This is in accord with the general rule in Montana. (Gobel v. Rinio, 122 Mont. 235, 200 P.2d 700; Hightower v. Alley, 132 Mont. 349, 318 P.2d 243; Reynolds v. Trbovich, Inc., 123 Mont. 224, 210 P.2d 634; Holland Furnace Co. v. Rounds, 139 Mont. 75, 360 P.2d 412, 91 A.L.R.2d 340). We hold that defendant was not prejudiced by Instruction No. 21 and that such Instruction was made complete by the trial court's instruction to the jury to consider the instructions as a whole.

Further, Instruction No. 21 was actually only the converse of Instruction No. 20 which was requested by defendant and given. Instruction No. 21 was drawn up to counteract the slant and emphasis of Instruction No. 20 by stating the matter in substantially the opposite way, and this fact was recognized by the trial judge. As stated in 88 C.J.S. Trial § 303: "A litigant is entitled to have his defense or cause of action affirmatively submitted, and the instructions submitting the converse of instructions given at the request of one party, should be given at the request of the other."

There may be merit to plaintiff's contention that defendant's objection to Instruction No. 21 was insufficient. The objection to Instruction No. 21 was that it was "confusing, misleading and repetitive of previous instructions already given."

No hint was given to the trial court of any claim that some necessary element was lacking or that it failed to discuss proximate cause. Thus, the objection was not made in accord with Rule 51 of the Montana Rules of Civil Procedure which states in regard to objections by counsel to instructions: "* * * [o]bjections made shall specify and state the particular grounds on which the instruction is objected to and it shall not be sufficient in stating the ground of such objection to state generally the instruction does not state the law or is against the law, but such ground of objection shall specify particularly wherein the instrument is insufficient or does not state the law, or what particular clause therein is objected to." Case law interpreting R.C.M.1947, § 93-5101, which Rule 51 superseded and is substantially much the same, (See Commission Note on Rule 51) holds generally that such failure to object resulted in losing the objection as a ground for appeal. (Holland Furnace v. Rounds, 139 Mont. 75, 360 P.2d 412, 91 A.L.R.2d 340; Brennan v. Mayo, 100 Mont. 439, 50 P.2d 245). We affirm these decisions but we are not holding that "every" objection to an instruction has to be in strict accord with Rule 51 for it to be available as a ground for appeal. However, in the instant case defendant's counsel had ample time and knowledge to make an objection to Instruction No. 21 and to specify particularly the ground for such objection. Before Instruction No. 21 was offered by plaintiff, defendant had earlier offered an instruction that was refused but which was similar except that it contained language concerning proximate cause. Counsel for defendant was certainly aware of the subject of proximate cause, and should have been able to specify particularly the ground for his objection. We hold that the objection was too general in nature under the circumstances, and that it was not available to defendant on appeal.

Defendant urges that plaintiff was not an invitee but only a mere licensee, or at least that the question of plaintiff's status should have been decided by the jury and not by the trial judge

who instructed the jury as a matter of law that plaintiff was an invitee at the time of the accident.

In Teesdale v. Anschutz Drilling Co., 138 Mont. 427, 433, 357 P.2d 4, 7, we said:

"In the case of Jonosky v. Northern Pac. Ry., 57 Mont. 63, 73, 187 P. 1014, 1015, this court stated the distinction between invitation and license as follows:

" '* * * Much of the confusion arises from the failure of the courts to distinguish between a license and an invitation, and particularly between an implied license and an implied invitation. The distinction is not merely one of descriptive phraseology, but has its foundation in sound common sense. An invitation is inferred where there is a *common interest or mutual advantage,* while a license is implied where the object is the mere pleasure, convenience, or benefit of the person enjoying the privilege.' Emphasis supplied.

"This common interest or mutual advantage test, as applied in the Jonosky case, has been expressly affirmed in the later Montana decisions of Hickman v. First Nat. Bank of Great Falls, 112 Mont. 398, 117 P.2d 275 [1941], and Ahlquist v. Mulvaney Realty Co., 116 Mont. 6, 152 P.2d 137. Also see Thompson v. Yellowstone Livestock Commission, 133 Mont. 403, 324 P.2d 412, which approved the same type of language as was used in a California decision."

Applying this common interest or mutual advantage test to the facts of the instant case, we conclude that plaintiff was an invitee of defendant at the time of the accident. It is true that plaintiff's purpose in visiting the Fetter ranch was to see his aunt and was for his own benefit and interest. But, by the admissions of the officers of the defendant corporation itself, he had been assisting in the hay field for at least half an hour before the fire was seen, he had accompanied them back to the farm buildings, helped fight the fire, had helped start the irrigation pump motor, and finally was asked to stuff Wallace Fetter's shirt into the gap between the two pipes shortly

138

before the explosion. These actions by plaintiff were for the benefit or advantage of defendant. For these reasons the presence of plaintiff on the premises was for the common interest or mutual advantage of both plaintiff and defendant, and he was an invitee of defendant while at the fire and at the time of the explosion. The trial judge was justified in instructing the jury that plaintiff was an invitee as a matter of law.

Since the relationship between plaintiff and defendant was an invitee-invitor relationship, defendant owed plaintiff the duty of exercising reasonable or ordinary care, and to warn plaintiff of any hidden or lurking danger although defendant was not an insurer against all accidents and injuries to invitees. Taylor v. Chicago, Mil., St. P. & P. Ry. Co., 142 Mont. 365, 384 P.2d 759; Cassaday v. City of Billings, 135 Mont. 390, 340 P.2d 509. Under the circumstances there was clearly a hidden or lurking danger that defendant knew about. Defendant had knowledge through its officers of the presence in the building of ditching dynamite, blasting caps, black powder and nitrogen fertilizer. Defendant knew that the first three were explosive in nature, and its president thought that the fertilizer was marked "DO NOT DROP." Armed with this knowledge, only one inquiry was made as to whether "dynamite" had been removed. No inquiry was made about the black powder, or blasting caps, or fertilizer. It was the duty of defendant to warn plaintiff of these explosives; the failure to do so constituted actionable negligence. Chichas v. Foley Brothers Grocery Co., 73 Mont. 575, 582, 236 P. 361; McCulloch v. Horton, 102 Mont. 135, 56 P.2d 1344; Nichols v. Consolidated Dairies, 125 Mont. 460, 239 P.2d 740, 28 A.L.R.2d 1216; Cassaday v. City of Billings, 135 Mont. 390, 340 P.2d 509. The foregoing is sufficient to answer defendant's contention that the trial court's refusal to give an instruction that would require defendant to have "actual knowledge" was reversible error. Defendant, in fact, did have "actual knowledge" of explosives in the burning building but gave no warning of them to plaintiff.

Defendant further asserts that the trial court erred in not instructing the jury that defendant was not an insurer of all persons on his land. We cannot agree with defendant. Instruction No. 17 reads as follows:

"You are instructed that the mere happening of an accident raises no presumption of negligence on the part of the defendant, and you must not assume or find, merely because it is undisputed that an accident occurred in which the plaintiff was injured, that the defendant was negligent, or that it is legally responsible for the happening of such incident or the results thereof." This instruction was sufficient to impress upon the jury that defendant was not an insurer against all accidents and injuries.

Defendant urges that it was prejudicial and reversible error for the trial court to permit plaintiff's counsel, over objection, in his argument to the jury, to suggest a mathematical basis for fixing damages on a per diem basis. The rule in Montana is to leave the propriety of counsel's use of a per diem argument to the sound discretion of the trial court. Wyant v. Dunn, 140 Mont. 181, 368 P.2d 917. But, in the Wyant case we also held that because the per diem argument is used for illustrative purposes, the trial judge in permitting such argument should instruct the jury that any remark of counsel not sustained by the evidence is to be disregarded. (Wyant v. Dunn, supra) Such an instruction was not given by the trial judge in the instant case. However, whether improper argument requires reversal depends upon whether prejudice has resulted which prevents a fair trial. (Wyant v. Dunn, supra) Upon examining the record, we cannot say that any prejudice resulted against defendant.

Defendant also contends that the verdict of $80,000 is excessive and was prompted by passion and prejudice. The amount of damages in this type of action is submitted first to the sound discretion of the jury, and next to the discretion of the judge of the trial court. The judge, in ruling upon the

motion for a new trial, may consider the evidence again, determine the facts again, and set aside or modify the verdict if it is not just. Sullivan v. City of Butte, 87 Mont. 98, 285 P. 184; Dahlin v. Rice Truck Lines, 137 Mont. 430, 352 P.2d 801; Wyant v. Dunn, 140 Mont. 181, 368 P.2d 917. The appellate court will then set aside on appeal the jury's verdict if, after an examination of the entire record, it finds that in fixing the damages the jury was actuated by passion and prejudice. Hollenback v. Stone & Webster Eng. Corp., 46 Mont. 559, 129 P. 1058; Hinton v. Peterson, 118 Mont. 574, 169 P.2d 333; Wyant v. Dunn, supra. But neither the amount of the verdict nor anything else in the record shows that the jury was actuated by passion or prejudice in reaching its verdict.

The next question is whether or not the verdict is excessive. Considering the evidence of plaintiff's age and health before the accident, his life expectancy, the hospitalization, doctor, and medical expenses necessary and incidental to the injuries, and the loss of earnings because of the injuries, and the pain and suffering, both past and future, from the injuries, we do not find that the amount allowed by the trial court is excessive.

We find no reversible error in the record, and the judgment of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES JOHN C. HARRISON, DOYLE and ADAIR concur.